CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 11 2020

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 7:17-CR-00056 |
| | ) |
| | ) By: Michael F. Urbanski |
| MONTA ORLANDO JORDAN, et al. | ) Chief United States District Judge |

## MEMORANDUM OPINION

This matter comes before the court on defendant Monta Orlando Jordan's ("Jordan") amended motion to suppress "any and all evidence or statements gathered by law enforcement as a result of the issuance (and subsequent re-issuance) of the Search Warrants for Tracking Device" ("Search Warrants"). Def.'s Am. Mot. Suppress, ECF No. 193 at 1. Claiming the search warrant affidavits are facially deficient, Jordan seeks suppression of all evidence obtained "as a result of or in relation to the GPS tracking devices" as "fruit of the poisonous tree." Id. at 7. The government responded, arguing that even if the warrant applications were deficient, the "good faith" exception saves the evidence obtained. Gov't. Resp., ECF No. 199 at 1. A hearing was held on February 5, 2020 during which the court heard the testimony of Detective J.B. Flippin ("Detective Flippin"), an officer with the Roanoke City Police Department ("RCPD"), who prepared affidavits for the Search Warrants in question. For the reasons that follow, Jordan's request to suppress the evidence obtained as a result of the Search Warrants is **DENIED**.

1

**I.**

According to the affidavits for the Search Warrants, Roanoke Valley Regional Drug Unit ("the Unit") investigated Jordan for suspected distribution of cocaine, methamphetamine, and heroin in the Roanoke Valley during 2016 and 2017. Id. at 2. At the February 5, 2020 hearing, Detective Flippin testified that based on surveillance; statements against penal interest made by confidential informants; information obtained by other law enforcement jurisdictions in the course of their own unrelated investigations; trap and trace monitoring; and other sources, the Unit believed that probable cause supported Jordan's involvement in narcotics distribution and that attaching GPS devices to his vehicles would aid their investigation.

On February 8, 2017, RCPD detectives applied for the Search Warrants to place GPS tracking devices on a gold 2002 Chrysler Sebring (the "Sebring") and a white 2016 Mercedes Benz SUV (the "Mercedes"), the latter of which was driven primarily by his longtime girlfriend, Amany Raya. Id. at 1-3. Later, in May 2017, the RCPD applied for search warrants for two additional vehicles, one of which was a 2005 Lincoln Sedan (the "Lincoln"). The Search Warrants were initially reviewed and approved by a state magistrate and were later renewed three times by two state circuit court judges. ECF No. 199 at 5. Detective Flippin testified that for renewal, it is RCPD policy to notify the Commonwealth's Attorney of their desire to seek a warrant extension, after which it is the Commonwealth's Attorney's responsibility to approach a competent court with the request.

The sworn affiant for the Search Warrants in question was Detective Flippin. ECF No.

2

193 at 2. He has been with RCPD since 2008, is currently assigned to the Unit, and "has experience with narcotic investigations that has led to the seizures of narcotics and arrest of narcotics traffickers related to heroin as well as other narcotics." ECF Nos. 199-1 at 6, 199-2 at 6. He testified to having significant experience applying for search warrants. He also testified that it is RCPD practice to include in a search warrant application the minimum amount of accurate factual information necessary to establish probable cause. Detective Flippin cited as a reason the need to protect the investigation. He testified that on occasion, a magistrate will find a search warrant application to be insufficient. In these instances, Detective Flippin will reapply with additional information.

Jordan's argument focuses on the minimalist nature of the applications for the Search Warrants, arguing that they are "wholly lacking in any probable cause whatsoever." ECF No. 193 at 2 (emphasis removed). While conceding at oral argument that the applications on their face do not provide probable cause, the government argues they are admissible because the officer reasonably relied on their validity under United States v. Leon, 468 U.S. 897, 926 (1984). The court agrees with the government and declines to apply the exclusionary rule because the officer had a reasonable belief that probable cause existed at the time of application and Detective Flippin's failure to disclose more information on the affidavit was inadvertent, not due to bad faith.

## II.

Under the Fourth Amendment,[1] citizens are protected from unreasonable searches and

---

[1] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

3

seizures. U.S. Const. amend. IV. Attaching a GPS tracking device to an individual's vehicle to monitor its movements constitutes a search within the meaning of the Fourth Amendment. United States v. Jones, 565 U.S. 400, 402 (2012). For a search to be reasonable, it must either be approved by the issuance of a search warrant backed by probable cause or fall within one of the established exceptions to the search warrant requirement. Here, because the government does not assert an exception to the search warrant requirement applies, a warrant is required for the search to be valid, and the warrant must be supported by probable cause found by a "neutral and detached" magistrate. Gerstein v. Pugh, 420 U.S. 103, 112 (1975). When a search warrant is found to be facially deficient, courts may apply the exclusionary rule as a remedy, suppressing all the evidence obtained pursuant to the invalid warrant. Davis v. United States, 564 U.S. 229, 231-232 (2011). However, evidence obtained by officers reasonably relying on a subsequently invalidated search warrant is not subject to the exclusionary rule. United States v. Leon, 468 U.S. 897, 926 (1984).

Jordan argues the affidavits for the Search Warrants lacked sufficient information to establish probable cause. Probable cause exists when, given all the circumstances set forth in the warrant application, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238-39 (1983). Therefore, "[a]n affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause...his action cannot be a mere ratification of the bare conclusions of others."

---

searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

Id. at 239. Reviewing courts apply the "clear error" standard to determine whether the magistrate erred in issuing the search warrant. Id. A "strong presumption of validity" attaches to an affidavit in support of a search warrant and reviewing courts are limited to the "four corners of the application documents." United States v. Wilford, 961 F.Supp.2d 740, 773 (D. Md. 2013). Indeed, a magistrate's assessment of facts when finding probable cause should be awarded "great deference." United States v. Anderson, 851 F.2d 727, 728 (4th Cir. 1988).

The affidavits for the Search Warrants are sparse. The first, regarding the Sebring, states five facts to demonstrate probable cause: (1) Jordan was under investigation for narcotics trafficking; (2) Detective Flippin has seen Jordan driving the vehicle within 72 hours of filing the application; (3) the vehicle is registered to Jordan; (4) Detective Flippin suspects Jordan of distributing narcotics; and (5) Detective Flippin "knows it to be common for individuals that distribute narcotics to drive multiple vehicles to distribute narcotics/collect drug proceeds to attempt to not alert police detection." ECF No. 199-1 at 5. The second affidavit, regarding the Mercedes, includes six facts to demonstrate probable cause: (1) Jordan was under investigation for narcotics trafficking; (2) Detective Flippin believes Jordan is dating Amany Raya; (3) Detective Flippin believes Jordan owns the vehicle; (4) Raya has been seen driving it within the past fifteen days; (5) Detective Flippin believes Raya and Jordan distribute drugs; (6) Detective Flippin "knows it to be common for individuals that distribute narcotics to drive multiple vehicles to distribute narcotics/collect drug proceeds to attempt to not alert police detection." ECF No. 199-2 at 5. Jordan contends these facts amount to conclusions without any supporting proof in the form of informant statements, witnesses, or specific transactions,

among other things. ECF No. 193 at 2-3. The court agrees.

The court finds that the affidavits for the first two Search Warrants to be insufficient to provide probable cause that "contraband or evidence of a crime will be found in a particular place." United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992). Probable cause is evaluated based on the "totality of the circumstances," meaning, the information and inferences derived from the facts alleged in the affidavit. Here, no corroborated facts are offered; rather the affidavits state merely that Jordan is under investigation for narcotics trafficking. Simply stating that Jordan is suspected of criminal activity falls short of establishing probable cause. See, e.g., United States v. Wilhelm, 80 F.3d 116, 120-21 (4th Cir. 1996). For an affidavit to demonstrate a "fair probability" that evidence of a crime would be found at the search site, it must at a minimum provide a "substantial basis" for believing there has been a crime. Illinois v. Gates, 462 U.S. 213, 238-39 (1983). Here, the court is given nothing more than the "bare conclusions of others." Id. at 239.

Regardless, the court exercises its discretion to proceed directly to the question of good faith. See Leon, 468 U.S. at 925; United States v. Legg, 18 F.3d 240, 243 (4th Cir. 1994).

### III.

The evidence discovered pursuant to the Search Warrants is admissible, even if the warrants are invalid for lack of probable cause, because investigators reasonably relied on their validity. United States v. Leon, 468 U.S. 897 (1984). In Leon, the Supreme Court held that evidence obtained by an officer who relied, in good faith, on a facially invalid search warrant is still admissible if the officer had an "objectively reasonable belief" that there was

probable cause to execute the search. Id. at 919. The Court states that the test is whether a "reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." Id. at 922 n. 23. If the error was on the part of the judge, not the officer, then the exclusionary rule would not further the ends of justice. Id. at 919-21. The exclusionary rule endeavors to protect defendants from the use of illegally obtained evidence against them, "to deter future unlawful police conduct." United States v. Calandra, 414 U.S. 338, 347 (1974).

At the February 5, 2020 hearing, counsel for Jordan argued that the Sebring and Mercedes affidavits were so facially deficient that no reasonable officer, let alone one with over ten years of experience, could have an "objectively reasonable belief" in their validity. Leon, 468 U.S. at 919. In reaching this question, the court is permitted to consider information beyond the four corners of the application such as the "uncontroverted facts" known to an officer that were "inadvertently not presented to the magistrate." United States v. McKenzie-Gude, 671 F.3d 452, 460 (4th Cir. 2011). Additionally, courts can look to subsequent judicial determinations made based on the original warrant application. United States v. Lalor, 996 F.2d 1578, 1583 (4th Cir. 1993) (discussing how the fact that two judicial officers determining that the affidavit provided probable cause to search indicates that officer's reliance on the affidavit is objectively reasonable).

At the suppression hearing, the government demonstrated that probable cause for the search existed at the time of the application. Detective Flippin testified that he and other investigators had conducted several interviews of Jordan's co-conspirators. Flippin explained

that these persons provided consistent accounts against their penal interest that they had either received narcotics from Jordan or witnessed him distribute narcotics to others. Flippin also testified that he and Task Force Officer Sloan were contacted by law enforcement officers from Baltimore with wiretap evidence of Jordan engaging in narcotics conversations. Flippin testified that he was aware of this information when applying for the Sebring and Mercedes Search Warrants, which makes the information obtained from these interviews "uncontroverted facts" known to the officer at the time of application. McKenzie-Gude, 671 F.3d at 460. Sources of information making statements that are consistent with each other, against their own penal interests, and corroborated by officer investigation is more than sufficient to establish probable cause. Id. at 462. ("an affidavit based on hearsay can establish probable cause depending on 'all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information' and the 'degree to which an informant's story is corroborated'") (quoting United States v. Hodge, 354 F.3d 305, 309 (4th Cir. 2004)). Courts need not disregard specific, uncontroverted facts known to officers, based on their knowledge and experience, including the unique knowledge and experiences of the affiant. Herring v. United States, 555 U.S. 135, 145 (2009). At the hearing, the court found Detective Flippin to be a credible witness.

At the February 5, 2020 hearing, Jordan also argued the existence of bad faith, which would preclude the application of Leon. As evidence of bad faith, Jordan cited: (1) Detective Flippin's decision to apply for a search warrant in state court, despite the ongoing investigation into Jordan at the federal level; and (2) Detective Flippin's inclusion of new facts in the May

8

12, 2017 Lincoln affidavit that were not included in the February Search Warrant affidavits. Jordan's counsel suggested that Detective Flippin was gaming the system by seeking state court warrants based on barebones affidavits in an otherwise federal investigation. Additionally, Jordan suggested that Flippin knew the February Search Warrant affidavits were insufficient, as evidenced by the fact that additional information was included in the May Lincoln affidavit. The Lincoln affidavit mirrored the Sebring and Mercedes affidavits but added a reference to the interviews he had conducted indicating that Jordan was their source of supply for narcotics. ECF no. 212-4 at 5.

The court does not conclude that Detective Flippin acted in bad faith. With regard to the decision to seek state court warrants, Detective Flippin testified that as a Roanoke City Police Officer, his normal procedure is to seek state warrants. When asked why he included the five interviews in the Lincoln application but not the earlier Sebring or Mercedes applications, Detective replied that the omission of the reference to the interviews was an oversight. Having listened to the testimony of Detective Flippin, the court finds this inadvertence not to be indicative of bad faith. United States v. Thomas, 908 F.2d 68, 74 (4th Cir. 2018).

Finally, the government contends that Detective Flippin's reliance on the warrant was reasonable because three separate state judicial officers on a total of four occasions found the search warrant applications to be supported by probable cause. ECF No. 199 at 6. The confirmation of a search warrant's validity by more than one judge helps support the argument of good faith reliance. United States v. Perez, 393 F.3d 456, 461 (4th Cir. 2004); Lalor, 996

9

F.2d at 1583. "[I]t is the magistrate's responsibility to determine whether probable cause exists, and officers cannot be expected to second-guess that determination in close cases." United States v. Mowatt, 513 F.3d 395, 404 (4th Cir. 2008) (abrogated on other grounds by Kentucky v. King, 563 U.S. 452 (2011)).

The court finds that Detective Flippin acted in good faith reliance on the Search Warrants. While the affidavits themselves did not on their face reflect that Flippin had conducted multiple interviews indicating that Jordan was trafficking in illegal narcotics, the court finds that the absence of this information from the warrant application was an oversight and not the product of bad faith. The applications were approved by the state magistrate and extended by two state circuit judges over several months. Under these circumstances, the Leon good faith exception bars application of the exclusionary rule in this case. Jordan's motion for suppression of evidence borne of the GPS tracking devices is **DENIED**.

An appropriate Order will be entered.

ENTERED: 02/11/2020

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge