IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 7:17-cr-56 |
| v. ) | |
| ) | |
| MONTA ORLANDO JORDAN, ) | By:   Michael F. Urbanski |
| et. al. ) | Chief United States District Judge |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter comes before the court on defendant Monta Orlando Jordan's motion for judgment of acquittal on Counts One and Six of the Superseding Indictment or, in the alternative, motion for a new trial. ECF No. 270. The government has responded, opposing the motion.[1] ECF No. 283. For the reasons stated herein, the court will **DENY** Jordan's motion for judgment of acquittal and motion for a new trial.

I.

On February 25, 2020, following five days of trial, the jury in this case found Jordan guilty of Count One, conspiracy to possess with the intent to distribute, and to distribute, 1000 grams or more of a mixture and substance containing a detectable amount of heroin, 400 grams or more of a mixture and substance containing a detectable amount of Fentanyl, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, and 500 grams or more of a mixture and substance containing a detectable amount of cocaine; Count Three, possession with intent to distribute fentanyl; Count Four,

---

[1] The court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

attempted possession with intent to distribute Cocaine; Count Five, attempted possession with intent to distribute heroin; and Count Six, possession of one or more firearms in furtherance of a drug trafficking conspiracy, of the Superseding Indictment. Jury Verdict, ECF No. 264.

Jordan then filed the current motion. First, he reasserts several objections made at trial to the court's ruling on his request for the investigative notes of law enforcement officers and the notes taken by AUSA Ashley Neese; his motion for evidence of officer wrongdoing pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and Giglio v. United States, 405 U.S. 150 (1972); and his motions to suppress the evidence obtained pursuant to a Title III application and the GPS search warrants. He also seeks judgment of acquittal as to Count One, arguing insufficiency of evidence to sustain the conviction generally, and specifically to support the jury finding of a drug weight of 500 grams or more of methamphetamine. He further claims the court erred in not granting his motion for mistrial on the grounds that the government caused its witness to disclose to the jury that Jordan was a convicted felon and that the court's limiting instruction could not cure the prejudice. Additionally, Jordan contends that the court submitted Count Six to the jury in error, because there was insufficient evidence from which a jury could find Jordan guilty, and that the count should be dismissed. He argues that the court must acquit him of Count Six because a reasonable jury could not have found him guilty without relying on impermissible testimony.

The government argues that the court's rulings on Jordan's pretrial motions were correct and that there was sufficient evidence to sustain the conviction as to Counts One and Six. After careful review of the trial record and the pleadings, the court agrees with the government and finds no grounds for a judgment of acquittal or a new trial.

## II.

Rule 29 of the Federal Rules of Criminal Procedure states that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Rule 29 further provides that a court can reserve decision on a motion for acquittal until after the jury returns a verdict or is otherwise discharged. Fed. R. Crim. P. 29(b). Here, the court reserved decision on the Rule 29 motion made at the close of the government's case, and, accordingly, the court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Fed. R. Crim. P. 29(b).

"A judgment of acquittal based on the insufficiency of evidence is a ruling by the court that as a matter of law the government's evidence is insufficient 'to establish factual guilt' on the charges in the indictment." United States v. Alvarez, 351 F.3d 126, 129 (4th Cir. 2003) (quoting Smalis v. Pennsylvania, 476 U.S. 140, 144 (1986)). "The test for deciding a motion for a judgment of acquittal is whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." United States v. MacCloskey, 682 F.2d 468, 473 (4th Cir. 1982). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). Accordingly, a court must deny a defendant's motion if the evidence presented at trial, viewed in the light most favorable to the government, is sufficient for a rational juror to find each

element of the offense beyond a reasonable doubt. United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1402 (4th Cir. 1993) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Here, Jordan argues that there was insufficient evidence to support the jury's guilty verdict as to Counts One and Six.

### A. COUNT ONE

With respect to Count One, Jordan makes two arguments. First, Jordan argues that there was insufficient evidence present at trial to support a conviction of conspiracy to possess with intent to distribute, and to distribute various quantities of mixtures containing detectable amounts of cocaine, heroin, fentanyl, and methamphetamine. ECF No. 270, at 3. Without citing specific facts, omissions, or legal authority, Jordan states his belief that "the evidence did not establish that the Defendant conspired with others to engage in the trafficking of cocaine, heroin, methamphetamine, or fentanyl." Id. At trial, the government presented direct evidence from cooperators and law enforcement involved in a multiyear investigation as well as circumstantial evidence in the form of text messages alluding to the conspiracy, conversations recorded pursuant to a wiretap, and evidence of unexplained income during Jordan's periods of unemployment. In evaluating the sufficiency of evidence proffered, the court may not make credibility determinations and must resolve all contradictions in testimony in the government's favor. United States v. Burfoot, 899 F.3d 326, 334 (4th Cir. 2018). The court finds the evidence supporting a conviction under Count One to be substantial.

Second, Jordan argues that the government specifically failed to present sufficient evidence to support the jury verdict that Jordan was guilty of conspiring to possess and distribute 500 grams or more of a mixture containing a detectable amount of

methamphetamine. ECF No. 270, at 3-4. He claims that the court should grant acquittal as to Count One subsection (c), alleging conspiracy to possess and distribute 500 grams or more of a mixture containing a detectable amount of methamphetamine, because

> the Government (i) did not produce an actual, tangible exhibit establishing the possession or sale of methamphetamine, (ii) did not produce a single witness or introduce a single laboratory confirmation that methamphetamine was involved in the case and (iii) only produced witness testimony from cooperating witnesses as to the presence of methamphetamine as part of the conspiracy.

Id. at 4. Jordan claims that no reasonable jury could have concluded that he trafficked in methamphetamine at all, let alone in more than 500 grams of the substance because the only testimony supporting the conviction was provided by cooperating witnesses. To the extent that Jordan raises questions of potential bias in the testimony supporting his conviction, the court cannot make credibility determinations in evaluating the sufficiency of evidence.

Jordan also argues that the cooperating witnesses were not chemists, or otherwise trained in identifying controlled substances, and therefore their testimony that the substance was in fact methamphetamine is insufficient to support the conviction of conspiracy to traffic in methamphetamine. At trial, the court instructed the jury:

> In determining whether the government has proved the substances in this case were controlled, you may consider lay testimony and any relevant circumstantial evidence. Such circumstantial proof may include evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried

5

> on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence.

Jury Instructions, ECF No. 261 at 38-39.[2] Such instruction is consistent with controlling case law in the Fourth Circuit, which does not require the use of expert testimony to provide sufficient evidence as to the identity and drug weight of a controlled substance. United States v. Scott, 725 F.2d. 43, 46 (4th Cir. 1984). The Fourth Circuit has instructed that

> [L]ay testimony and circumstantial evidence may be sufficient, without the introduction of an expert chemical analysis, to establish the identity of the substance involved in an alleged narcotics transaction. Such circumstantial proof may include evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or by others in his presence.

United States v. Dolan, 544 F.2d 1219, 1221 (4th Cir.1976). Circumstantial evidence is especially important to establish the identity of a controlled substance where, as here, it is impossible to test the alleged mixture. United States v. Shelton, No. 7:05-M-00164, 2005 WL 1801669, at *2 (W.D. Va. July 27, 2005) (citing United States v. Scott, 725 F.2d 43, 44 (4th Cir. 1984)). The government provided the testimony of two co-conspirators involved in the enterprise alleged in Count One who testified that the identity and weight of the substance as over 500 grams of a mixture containing a detectable amount of methamphetamine. This

---

[2] When given the opportunity to raise objections to the jury instructions, Jordan presented none.

6

evidence is sufficient to sustain this conviction. United States v. Wilson, 115 F.3d 1185, 1190 (4th Cir. 1997) ("the uncorroborated testimony of one witness or … accomplice may be sufficient to sustain a conviction[.]").

## B. COUNT SIX

With respect to Count Six, Jordan claims that the court erred in sending Count Six to the jury because, at the close of the government's case, there was insufficient evidence tying the firearm in question to the conspiracy alleged in Count One. ECF No. 270, at 9-10. During his Rule 29 motion at trial, counsel for Jordan argued that the government had not established a sufficient nexus between the firearm at issue in Count Six and the drug trafficking enterprise at issue in Count One beyond demonstrating broadly that drug dealers often use firearms to incite fear, for protection, to make threats, and to otherwise further the conspiracy. Counsel for Jordan contended that concurrently establishing possession of a firearm and the existence of a drug enterprise is insufficient, as the implied connection is too tenuous to support a conviction that the defendant possessed the firearm in furtherance of a drug trafficking crime. Indeed, he suggested that the court's decision to take Jordan's Rule 29 motion as to Count Six under advisement at trial is evidence "that the Court struggled with the issue" and "is, by itself, a strong indication that the matter was a 'close call' that should have been resolved in favor of the Defendant." Id.

For the reasons stated at trial and augmented herein, the court finds it had sufficient evidence to send Count Six to the jury. The Fourth Circuit has indicated there are "numerous ways in which a firearm might further or advance drug trafficking," from protection during collection to defending turf. United States v. Lomax, 293 F.3d 701, 705 (4th Cir. 2002). The

government need not present direct evidence demonstrating the use of the firearm in a specific way that furthers the enterprise if it establishes the existence of sufficient elements that "that might lead a fact finder to conclude that a connection existed between a defendant's possession of a firearm and his drug trafficking activity." Id. These factors include but are not limited to "the type of drug activity that is being conducted, accessibility of the firearm, the type of weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." Id. (quoting United States v. Ceballos–Torres, 218 F.3d 409, 414-15 (5th Cir. 2000)). At trial, the government presented evidence suggesting the need for protection in drug enterprises as vast as the one alleged in Count One, the assault-style features of the weapon, the trend of using guns as currency in drug enterprises, and that the gun was purchased by one of Jordan's close confederates after consultation with Jordan. The court's decision to take the motion under advisement, to enable additional research and deliberation, cannot and should not be taken as evidence that the ultimate decision was a "close call." The court finds no clear error in submitting Count Six to the jury based on evidence supporting the nature and scope of the enterprise and the unlikeliness that Jordan would fund his compatriot's purchase of a firearm for purposes unrelated to the enterprise.

     Similarly, the court finds the jury's verdict is reasonable based on the available evidence and that acquittal would be improper. In the instant motion, Jordan contends the jury's conviction is unreasonable based on the available, permissible evidence. In support, he suggests that the jury would have been unable to find him guilty but for the combined impermissible testimony of two the government's witnesses, Chelsea Fry and Officer

8

Morehead. ECF No. 270, at 10. At trial, the court instructed the jury that "[t]o possess a firearm in furtherance of a drug trafficking crime means that the firearm helped forward, advance or promote the commission of the drug trafficking crime." Jury Instructions, ECF No. 261, at 51. The jury was also instructed that "it may consider but is not limited to considering" the aforementioned Ceballos–Torres factors. Jordan argues that the government provided no evidence supporting a finding for any of these factors, except for the status of possession. He argues that in finding that Jordan illegally possessed the firearm, the jury impermissibly relied on what he claims was "willful and vindictive" testimony by Chelsea Fry that Jordan told her he was a convicted felon. ECF No. 270, at 10. Specifically, he references the following testimony:

> Q: Okay. Did you ever have any discussions with Mr. Jordan directly about why it was important for you to be the driver?
> A: Yeah, yes.
> Q: And what did Mr. Jordan tell you about that?
> A: Because I'm white, he's black. I'm a female, he's a male. I have a clean record, whereas he's a convicted felon.

Tr. of Chelsea Fry, ECF No. 275, at 3:4-11. Counsel for Jordan objected to the statement at trial, moving for mistrial. The court denied the motion for mistrial but struck the offending testimony from the record and provided the jury with a curative limiting instruction that it may not consider the testimony regarding Jordan's prior convictions at all in assessing his guilt for the allegations in this case. The court reiterated this limiting instruction at the close of trial. As the court will address in greater detail below, Jordan argues that the testimony is too prejudicial to be cured by the jury instruction and that the jury must have impermissibly relied on Fry's testimony, in spite of the limiting instruction, in finding Jordan guilty of Count Six.

9

He further alleges that Officer Morehead provided unsolicited testimony emphasizing the impermissibility of felons owning firearms during cross-examination, which Jordan believes is additional evidence that the jury relied on Fry's statements in convicting on Count Six.

For its part, the government argues that it presented substantial evidence at trial to support a connection between the firearms recovered and the drug conspiracy independent of Jordan's legal status. ECF No. 283, at 17-18. It offered expert testimony from First Sergeant Joseph Crowder about the methods and patterns of drug dealers, including the various possible uses for a firearm in a trafficking enterprise. A cooperating witness, W.R., also testified that, based on his personal experience as a dealer in drugs and firearms, he has seen high-level distributors such as Jordan, allegedly, use firearms to protect assets. The government also introduced recorded calls and text transcripts at trial to establish the close working relationship between Jordan and Perry Hash, a co-conspirator, and to demonstrate that Hash actually executed the transaction for the firearm at a price Jordan dictated. The conversations also focused on the qualities of the firearm as compact or "tactical," which the expert opinion from Crowder and testimony from W.R. suggested were qualities a high-level dealer would prefer. The firearms, which a rational juror could find to be within the ambit of weapons favored by high-level drug dealers based on the government's expert testimony and Jordan's recorded statement that he preferred "something small," were produced in court and available for inspection by the jury. The government also presented evidence that when Hash was ultimately arrested for illegal possession of the firearms in question under Count Six, Jordan offered to pay $5,500 of Hash's legal fees and discussed possible defenses to the charges with Hash, arguing that this action evinced an acceptance of some liability for the

firearms by Jordan. Cooperating witnesses also testified that Jordan had made comments regarding other firearms he possessed, indicating a pattern of behavior consistent with the ownership of the firearms at issue under Count Six. The court finds that the government presented substantial evidence supporting the jury's conviction of Jordan under Count Six, none of which rely on Fry's statements regarding Jordan's status as a convicted felon.

Accordingly, the court finds the government carried its burden of producing sufficient evidence from which a rational juror could find each element of Count One and Count Six beyond a reasonable doubt.

### III.

Jordan also moves for a new trial pursuant to Federal Rule of Criminal Procedure 33. Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. The district court "should exercise its discretion to grant a new trial sparingly, and it should do so only when the evidence weighs heavily against the verdict." United States v. Chong Lam, 677 F.3d 190, 203 (4th Cir. 2012) (internal citations and alterations omitted). Jordan claims that a new trial is warranted based on the court's incorrect ruling on pretrial motions, the court's error in denying Jordan's motion for mistrial following Fry's statement regarding Jordan's status as a felon, and because the jury impermissibly relied on Fry's statement in reaching a verdict. ECF No. 270, at 9. For the ample reasons articulated in the court's orders and opinions addressing pretrial motions, its statements on pretrial motions addressed at trial, and the fact that Jordan offers no new facts or legal arguments supporting his contention that the pretrial motions were resolved in error, the court finds no grounds for acquittal or a new trial based on its denial of

11

Jordan's discovery requests, motion for disclosure of exculpatory information, and motions to suppress evidence obtained pursuant to the GPS tracking devices and the Title III wiretap. The court limits its evaluation of Jordan's Rule 33 motion to the question of whether Fry's statement alluding to Jordan's status as a convicted felon was sufficiently prejudicial, even with the effect of a limiting instruction, to warrant a new trial. The court finds it was not.

Courts are given broad discretion in granting or denying motions for a new trial. United States v. Johnson, 587 F.3d 625, 631 (4th Cir. 2009). "Denial of a defendant's motion for mistrial is within the sound discretion of the district court and will be disturbed only under the most extraordinary of circumstances." United States v. Dorlouis, 107 F.3d 248, 257 (4th Cir. 1997); see also United States v. Helem, 186 F.3d 449, 454 (4th Cir. 1999) (holding that decision to give curative instruction and content of instruction is reviewed only for abuse of discretion). The Fourth Circuit has set out four factors that courts must consider when evaluating the prejudicial effect of an inadmissible statement. United States v. Mitchell, 1 F.3d 235, 241 (4th Cir. 1993). These include:

> (1) The degree to which the statement has a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Id. The court finds the statements were prejudicial under the first factor, which was the basis of its immediate decision to strike the statement from the record, provide a limiting instruction to the jury, and reiterate the limiting instruction at the close of trial. However, factor two indicates the prejudice was minimal given that the statement "was fleeting and isolated to a

single occurrence." United States v. Dykes, No. JPJ-2:18-CR-00003, 2019 WL 6729323, at *3 (W.D. Va. Dec. 11, 2019). When the reference "only vaguely referred to [Defendant's] criminal record and did not detail the extent or nature of his record," the prejudice is mitigated. Id. See also United States v. Allen, No. 92-5807, 1993 WL 475968, at *1 (4th Cir. 1993) (unpublished) (upholding denial of defendant's motion for mistrial because witness's reference to the defendant's prior incarceration came up only incidentally). The Fourth Circuit recently held that a stray reference to a defendant's prior incarceration does "not amount to prejudicial testimony requiring a mistrial." United States v. Smith, 919 F.3d 825, 841 n. 12 (4th Cir. 2019). The third factor also works against Jordan's claim of prejudice, because the evidence put forth by the government separate from Fry's isolated statement was "abundant and cumulative." United States v. Morrow, 731 F.2d 233, 235 n. 4 (4th Cir. 1984); see also Dykes, 2019 WL 6729323, at *3. As discussed above, the jury had substantial evidence from which it could rationally conclude that Jordan was guilty of Count One and Six beyond a reasonable doubt without considering the remote mention of Jordan's convict status. Finally, the fourth factor also operates against Jordan's request for a new trial, because Fry's statement bears no mark of vindication or deliberate misdirection. It was an offhand comment made during the course of a several-hour line of questioning asking the witness to recount the full gamut of involvement she had with Jordan and his enterprise. Indeed, Fry's statement was not introduced for the truth of the matter asserted, but rather introduced to explain why she was driving the vehicle after a drug transaction when she was arrested.

As another judge of this court noted in Dykes, "I find that my immediate curative instruction and general instruction to the jury were sufficient to negate any potential

13

prejudice." Id. (citing United States v. Johnson, 610 F.2d 194, 196 (4th Cir. 1979) (finding that the prosecution had "solidly proved its case" and the strong curative instruction given by the trial judge was sufficient); United States v. Jackson, 585 F.2d 653, 663 (4th Cir. 1978) (holding that even where the government's witness volunteered an improper statement during cross examination, mistrial was not require after the court's cautionary instruction to the jury). "[J]uries are presumed to follow the judge's instructions." United States v. Burfoot, 899 F.3d 326, 342 (4th Cir. 2018). The court finds that, in applying the Mitchell factors, there are no grounds on which to find the extraordinary relief of a new trial is warranted.

## IV.

For the reasons stated herein, the court **DENIES** Jordan's motion for judgment of acquittal or, in the alternative, for a new trial. An appropriate Order will be entered.

Entered: June 8, 2020

Michael F. Urbanski
Chief United States District Judge