IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 7:17-cr-56 |
| v. | ) | |
| | ) | |
| MONTA ORLANDO JORDAN, | ) | By:    Michael F. Urbanski |
| et. al., | ) | Chief United States District Judge |
| Defendant. | ) | |

## MEMORANDUM OPINION

This matter comes before the court on defendant Monta Orlando Jordan's second motion for a new trial or a judgment of acquittal pursuant to Federal Rules of Criminal Procedure 29 and 33, respectively. ECF No. 319. Jordan claims he is entitled to a new trial or acquittal on all counts because the government failed to disclose exculpatory evidence necessary to his defense in violation of Brady v. Maryland, 373 U.S. 83 (1963). The government opposed the motion, claiming the evidence was not suppressed because Jordan knew of its existence or, in the alternative, that it is not material to any count of the Third Superseding Indictment. ECF No. 329. Jordan replied, ECF No. 337, and the court heard argument  on December 1, 2020. At the hearing, the court directed the parties to file supplemental briefing on the remedies available to the court should the court find a Brady violation. The court also directed Jordan to file a supplemental brief addressing whether he was claiming the government's failure to disclose other evidence produced post-trial, such as administrative subpoenas, constituted a Brady violation. The parties submitted their supplemental briefing on December 22, 2020. ECF Nos. 346–48. The issues have been fully briefed and the matter is ripe for resolution.

# I.   BACKGROUND

Given the protracted nature of this prosecution, the court finds a review of the procedural history instructive. Jordan's motion concerns the government's conduct during both the investigation and the trial process. Def.'s Second Mot. For New Trial or Acquittal, ECF No. 319. Jordan claims the government intentionally suppressed a recorded interview between Perry Hash, a confederate, and Drug Enforcement Agency ("DEA") agents that contained exculpatory statements. He claims that the failure to produce this exculpatory evidence directly contravenes the court's orders, would have substantially impacted defense strategy before and during trial, and serves as evidence to support claims he has long made regarding government misconduct. Specifically, he argues this evidence corroborates his claim that law enforcement officers engaged in willful misconduct to obtain search warrants in at least two ways: (1) they burglarized his home to force him to "make contact with his 'people,'" thereby exposing them and himself to government apprehension; and (2) they fabricated evidence in support of their search warrant applications. Id. at 5, 13–14, and 33.

## A.   PROCEDURAL HISTORY

The Roanoke Valley Regional Drug Unit ("the Unit") investigated Jordan for suspected distribution of cocaine, methamphetamine, and heroin in the Roanoke Valley during 2016 and 2017. ECF No. 199 at 2. During the investigation, the government applied for permission to conduct various forms of surveillance. In February 2017, Assistant U.S. Attorney Ashley Neese applied for a Pen Register based on representations by DEA Agent Ryan Sloan that he had obtained statements from Misty Kauffman which incriminated Jordan. On February 8, 2017, Roanoke City Police Department ("RCPD") detectives applied for the search warrants

to place GPS tracking devices on a gold 2002 Chrysler Sebring and a white 2016 Mercedes Benz SUV, the latter of which was driven primarily by Jordan's girlfriend, Amany Raya. Id. at 1–3. As early as March 6, 2017, law enforcement employed the use of a pole camera outside Jordan's home to surveil his activity. ECF No. 329 at 13. The government also applied for and obtained Title III authorization for a wiretap on Jordan's phone on June 28, 2017, pursuant to 18 U.S.C. § 2518. ECF No. 192 at 1. Later, in May 2017, the RCPD applied for search warrants for two additional vehicles, including a 2005 Lincoln Sedan.

Jordan was arrested on August 10, 2017, near Roanoke, Virginia, for allegedly trafficking drugs. ECF No. 1. On September 7, 2017, a federal grand jury returned a two-count indictment against Jordan, charging him with attempting to possess cocaine and heroin with intent to distribute. ECF No. 22. On January 16, 2018, then-counsel for Jordan, David Damico, filed a motion to compel discovery because, with less than two weeks left before trial, the government, while only producing 123 pages of discovery, had hinted at the existence of much more. ECF No. 41. The government claimed further review of investigative material revealed the scope of Jordan's criminal conduct exceeded what was represented in the first indictment, so it pursued its First Superseding Indictment on January 18, 2018. It renewed the original two counts of drug trafficking and further charged Jordan, Chelsea Fry, and Clifton Meyers with possession with intent to distribute 400 grams or more of a mixture or substance containing a measurable amount of fentanyl and conspiracy to possess with intent to distribute fentanyl and other controlled substances between Summer 2016 and August 10, 2017. ECF No. 44. Accordingly, the government also moved to continue the trial. ECF No. 54.

On February 2, 2018, the court entered an oral order to appoint new counsel for Jordan, who represented that his relationship with Damico had deteriorated. ECF No. 65. Robert F. Rider was appointed to assist Damico, who was ordered to stay on the case until it could be fully transitioned to new counsel. ECF Nos. 66, 67.

On June 26, 2018, the United States presented and the grand jury returned a seven-count Second Superseding Indictment against Jordan, Myers, Fry, and Amy Wheeling, charging them with conspiracy to distribute 1000 grams or more of a mixture or substance containing heroin, 400 grams or more of a mixture or substance containing fentanyl, and 500 grams or more of mixtures or substances containing methamphetamine and cocaine (Count One). Jordan was also charged with attempted possession of cocaine with intent to distribute (Counts Two and Four), possession of fentanyl with intent to distribute (Count Three),[1] and attempted possession of heroin with intent to distribute (Count Five). Further, Jordan was charged "as a principal and as an aider and abettor" for possession of two firearms in furtherance of a drug trafficking crime (Count Six) and possession of those same firearms by a convicted felon (Count Seven). The offenses charged in Counts Six and Seven allegedly occurred on or about July 12, 2017, and involved firearms obtained by Jordan's confederate, Perry Hash. ECF No. 78.

On July 2, 2018, the court granted the government's request to designate this prosecution as a "complex case" for Speedy Trial Act purposes. ECF Nos. 90, 92.

---

[1] Count Three was also brought against Fry and Myers and arose from the interdiction with Fry on Interstate 81 on August 5, 2017. Jordan claims this  interdiction resulted from the alleged March 6, 2017, burglary of his house and precipitated the charges against him.

On October 25, 2018, Rider filed a motion to withdraw as counsel, citing "strong disagreements" over case strategy. ECF No. 105. Counsel indicated that Jordan did not believe he was pursuing the avenues necessary to investigate Jordan's claims of law enforcement misconduct. The court denied the motion following a hearing, ECF No. 111, but ordered the appointment of additional counsel to assist Rider. ECF No. 117. Rider moved to continue the trial pending the appointment of new counsel and to allow for time to prepare new counsel for the case. ECF No. 114. The court granted the motion. ECF No. 117. Louis K. Nagy was appointed to assist Rider on February 8, 2019. On April 18, 2019, Rider again moved to withdraw, this time citing health concerns. ECF No. 140. The court granted the motion to withdraw, ECF No. 141, and granted Nagy's request for additional counsel, ECF No. 142. A. Gene Hart was appointed as co-counsel for Jordan on May 7, 2019. ECF No. 144.

On May 30, 2019, Jordan filed a letter with the court, raising allegations of law enforcement misconduct. His letter included allegations that law enforcement burglarized his home, that law enforcement had inappropriate relationships with confidential informants, and that the U.S. Attorney's office was deliberately preventing disclosure of incriminating or impeaching evidence about the complained of officers. ECF No. 145. These allegations paralleled those brought in a civil matter, which the court dismissed as conclusory. See Op., Jordan v. Flippin, et. al., No. 7:19-cv-214 (W.D. Va. Mar. 6, 2020), ECF No. 73, at 14.

On July 10, 2019, counsel for Jordan moved to continue his jury trial, citing in part his concern that he did not receive the majority of the discovery material in the case from former defense counsel Rider until mid-June 2019. ECF No. 146. The government did not object and the court granted the continuance. ECF No. 157.

On December 27, 2019, Jordan filed a motion for specific discovery, a motion for early disclosure of <u>Giglio v. United States</u>, 405 U.S. 150 (1972) material, a motion to suppress wiretap material, and a motion to suppress GPS car tracking material. ECF Nos. 171–74, 191–93. Jordan alleged that the applications to obtain the GPS tracking devices were facially insufficient, that the applications to obtain the wiretap were based in part on fraudulent and unreliable evidence, that the government pursued its applications in state court despite the ongoing federal investigation in bad faith, that the government was intentionally suppressing exculpatory evidence, and that the government had engaged in a burglary of his house and was withholding information that would prove that fact. In response, the government adamantly represented that it had produced all relevant discovery in the case, denied the existence of specific discovery that Jordan claimed had not been produced, and argued that the GPS and wiretap warrants were sound. After conducting hearings on the matter, the court denied the motions for discovery and the motions to suppress. ECF Nos. 213–15, 223. Following the court's orders, the government filed a motion <u>in</u> <u>limine</u> requesting the court preclude the defense from putting forth evidence or pursuing any line of questioning related to law enforcement misconduct. ECF No. 216. The court granted the motion, finding no evidence to support the allegations. ECF No. 224.

On January 2, 2020, the government obtained a Third Superseding Indictment to amend two charges due to changes in the First Step Act and the Supreme Court's decision in <u>Rehaif v. United States,</u> 139 S. Ct. 2191 (2019), and to dismiss Wheeling and Fry as defendants given their earlier guilty pleas. ECF No. 175. On February 13, 2020, the government moved to dismiss Counts Two and Seven of the Third Superseding Indictment without prejudice.

ECF No. 225. The court granted the government's motion to dismiss on February 14, 2020, leaving four drug counts, Counts One, Three, Four, and Five, and one gun count, Count Six, for trial.

On February 14, 2020, Jordan filed a motion for a pre-trial hearing so that he might be allowed to address the court again regarding his claims of law enforcement misconduct. ECF No. 230. The court found the trial had been too long delayed and denied Jordan's motion for a hearing, finding he had ample opportunity to present evidence in support of his allegations at prior hearings. ECF No. 245. However, Jordan was permitted to address the court on the day trial was set to begin, before the jury was empaneled. ECF No. 250. After hearing again from Jordan, the court found no corroborating evidence for the allegations and upheld its order granting the government's motion in limine and preventing Jordan from pursuing these allegations during trial. Id.

Trial was held on February 18-25, 2020. At the close of evidence, Jordan made an oral Rule 29 motion arguing for acquittal on some or all of the charges against him due to court error in admitting certain evidence, court error in permitting certain counts to go to the jury, and the government's insufficiency of the evidence, especially pertaining to Count Six, charging possession of a firearm in furtherance of a drug trafficking crime. The jury returned a verdict of guilty on all counts. ECF No. 264. Jordan renewed his motion for acquittal or new trial on Counts One and Six following the verdict. ECF No. 270. The court denied the motion for the new trial, finding no reason to overturn the jury verdict as to any of the counts. ECF No. 301.

On May 26, 2020, Jordan filed a <u>pro se</u> motion with the court requesting new counsel on the grounds that he had reached an "impasse" with his current counsel, Nagy and Hart, "concerning matters relevant to past, present, and future decisions." ECF No. 292. The court denied the motion, noting that Jordan has been provided with multiple counsel and finding that there was no basis to appoint new counsel for sentencing. ECF No. 309.

At the end of June, Jordan again filed two <u>pro se</u> motions to re-open and reconsider the suppression hearing regarding the GPS tracking devices and for a new trial based on <u>Brady</u> and <u>Giglio</u> violations. ECF Nos. 304, 305. In support of his motion to reopen the suppression hearing, Jordan claimed that the affidavits intentionally included fraudulent information and omitted material information. ECF No. 304. In support of his motion for new trial, Jordan argued that the government withheld, among other things, a post-arrest recorded interview in which Perry Hash, a confederate of Jordan's, made exculpatory statements concerning Jordan's firearms charge. ECF No. 305.

The government sent an email to the court on July 1, 2020 responding to Jordan's <u>pro se</u> motions indicating that it had located previously undiscovered video footage of Perry Hash's 2018 post-arrest interview and that the video "did contain statements that are consistent with" Jordan's assertions regarding the Hash interview. Email, ECF No. 311-1. The court ordered the government to produce the video to defense counsel and ordered defense counsel to review the  video and Jordan's <u>pro se</u> filings in determining whether to file a supplemental Rule 29 or 33 motion. ECF No. 311. On August 10, 2020, Jordan, through counsel, filed a second motion for new trial or acquittal, arguing that the video footage was <u>Brady</u> material suppressed in violation of the Fifth Amendment Due Process guarantees and

that the suppression denied Jordan adequate representation in violation of the Sixth Amendment guarantee of effective assistance of counsel. ECF No. 319. As a remedy, Jordan seeks acquittal or a new trial on all or some of the charges brought against him.

### B. PERRY HASH VIDEO

Perry Hash was arrested on July 12, 2017, as a felon in possession of firearms, following a traffic stop conducted by Virginia State Trooper Todd Morehead. ECF No. 329 at 6. On January 19, 2018, Hash was charged by a federal grand jury on a single count of possession of a firearm by a convicted felon. Id. The firearms allegedly possessed by Hash on the date of his arrest are the same as those identified in Counts Six of the Third Superseding Indictment against Jordan, namely, a German Sporting Gun, model GSG522, .22 caliber semi-automatic rifle and a Romarm/Cugir, model Mini Draco, 7.62mm semiautomatic pistol. Id. Hash pled guilty to the charge on July 25, 2019, pursuant to a written plea agreement. Id.; see also United States v. Hash, No. 7:18-cr-3 (W.D. Va. Mar. 18, 2019), ECF Nos. 39, 40. The statement of facts related to Hash's plea does not address whether the guns were purchased for Jordan or why they were purchased. See United States v. Hash, No. 7:18-cr-3 (W.D. Va. Mar. 18, 2019), ECF No. 41.

The government contends that Hash and Jordan have a longstanding friendship and have jointly undertaken drug and firearm trafficking as early as 1994. ECF No. 329 at 6; see also United States v. Jordan et al., No. 7:94-cr-103 (W.D. Va. Mar. 21, 1995), ECF Nos. 50, 51 (judgments against Jordan and Hash). The government cites the Presentence Investigation Report from the Hash case for the proposition that the guns were consistent with a pattern of collaboration between Jordan and Hash and were therefore likely acquired on behalf of Jordan

in support of the drug operation. ECF No. 329 at 7. Hash disagreed in his sentencing memorandum, arguing that the firearms were acquired as "an attempt to do a favor for a friend." Id. At his sentencing hearing, Hash reiterated that the guns were purchased for Jordan but did not state that they were purchased in furtherance of drug trafficking. Id. at 7–8.

During discovery, the government provided defense counsel with short reports documenting Hash's 2017 arrest and post-Miranda interview and his 2018 arrest and post-Miranda interview. ECF No. 319 at 7; ECF No. 329 at 15. Although the government disclosed the video recording of Hash's 2017 interview, it did not disclose a substantive memorandum or video recording of  Hash's 2018 interview. ECF No. 319 at 7.

The January 19, 2018, interview occurred between Hash and Agents Joe Crowder and Charlie Sanders. During the interview, Agent Crowder asked Hash about the events of July 12, 2017, during which the DEA had reason to believe that Hash and Jordan had a conversation regarding the purchase of firearms. Upon questioning, Hash initially said "nothin happened" on that day. He denied visiting the house of the individual from whom he purchased the drugs and denied knowing of that individual's occupation or involvement in firearms trafficking. When asked where he was going prior to his arrest and his intentions for the guns, he said he "was going to keep them." Hash claimed he needed firearms for protection because of the violence in the neighborhood and claimed the police records would show numerous calls he made complaining about shootings. He then reiterated, "I got the guns, so the guns are on me. I'm not getting anybody else involved with that." He said he did not know Jordan to trade guns and denied ever seeing him with a gun. In response, Agent Crowder said, "I mean everybody I have talked to says Monta is not a gun guy," and Hash agreed. When

asked if Jordan had ever asked him to go buy a gun, Hash said "no." He then explained that, the day he found the guns, he told Jordan he "had gotten us some nice guns" because "stuff was going around our house and his house was getting broke into and stuff."

Agent Crowder clarified whether Jordan's house had been broken into, and Hash confirmed, "Yeah, his house had gotten broken into." Hash explained that Jordan had been on vacation with his girlfriend, who was traveling for her job, when he called Hash to say he had seen people in his backyard. Hash stated he went over there after receiving the call from Jordan. When asked how Jordan knew there were people at his house, Hash explained Jordan saw it through the security cameras at his house from his phone.

Later in the interview, Agent Crowder again asked whether "there was someone else coordinating and telling you and directing you to go get those guns," and Hash again said the guns were his. When asked whether Jordan would pay for the guns, Hash claimed that only he paid for them. He said he paid $1,000 for the guns and that the full amount came from him, not Jordan. When asked whether Jordan was interested in one of the guns, Hash said he would have let his friend use the firearm for protection but not have it. He later said that Jordan did not know of or have a relationship with the individual from whom he obtained the firearms. He confirmed that Jordan was "out of the picture" for the whole transaction.

## II.   APPLICABLE LAW

Jordan claims he is entitled to acquittal or a new trial on all or some of the counts of the Third Superseding Indictment in light of the 2018 Perry Hash video. Jordan alleges the

government's failure to produce the Perry Hash video constitutes a <u>Brady</u> violation.[2] However, Jordan argues he is entitled to relief from the judgment even if the court does not find a <u>Brady</u> violation because the contents of the video constitute new evidence and bear on the sufficiency of evidence to support the jury verdict as to each count. As relief, Jordan requests either (1) a judgment of acquittal pursuant to Rule 29 as to all counts of the Third Superseding Indictment; (2) a judgment of acquittal pursuant to Rule 29 as to Count Six and a new trial pursuant to Rule 33 as to all other counts in the Third Superseding Indictment; (3) an order granting a new trial as to all counts of the Third Superseding Indictment; or (4) any other relief the court deems proper.

## A. RULE 29

Jordan moves for acquittal on all or some of the counts of which he was convicted, claiming insufficient evidence to support those convictions in light of the Hash testimony. Rule 29 of the Federal Rules of Criminal Procedure states that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Rule 29 further provides that a court can reserve decision on a motion for acquittal until after the jury returns a verdict or is otherwise discharged. Fed. R. Crim. P. 29(b). Here, the court reserved decision on the Rule 29 motion made at the close

---

[2] In his motion and at the hearing, Jordan identified other pieces of evidence that the government had allegedly failed to disclose until after trial, including administrative subpoenas, two prison videos between Cassandra Abernathy and Chelsea Fry, and text messages between the defendant and Chelsea Fry. The administrative subpoenas were ultimately produced following Jordan's second <u>pro</u> <u>se</u> motion for new trial. However, upon the court's order and in light of Agent Sloan's testimony during the December hearing, counsel for Jordan represented he did not consider the administrative subpoenas to constitute <u>Brady</u> material. ECF No. 346. The government has consistently maintained that the Abernathy/Fry prison videos do not exist and that it is not aware of the text messages Jordan seeks between he and Chelsea Fry.

of the government's case, and, accordingly, the court "must decide the motion on the basis of the evidence at the time the ruling was reserved." Id.

"A judgment of acquittal based on the insufficiency of evidence is a ruling by the court that as a matter of law the government's evidence is insufficient 'to establish factual guilt' on the charges in the indictment." United States v. Alvarez, 351 F.3d 126, 129 (4th Cir. 2003) (quoting Smalis v. Pennsylvania, 476 U.S. 140, 144 (1986)). "The test for deciding a motion for a judgment of acquittal is whether there is substantial evidence (direct or circumstantial) which, taken in the light most favorable to the prosecution, would warrant a jury finding that the defendant was guilty beyond a reasonable doubt." United States v. MacCloskey, 682 F.2d 468, 473 (4th Cir. 1982). "[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). Accordingly, a court must deny a defendant's motion if the evidence presented at trial, viewed in the light most favorable to the government, is sufficient for a rational juror to find each element of the offense beyond a reasonable doubt. United States v. United Med. & Surgical Supply Corp., 989 F.2d 1390, 1402 (4th Cir. 1993) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

## B. RULE 33

Jordan also moves for a new trial pursuant to Federal Rule of Criminal Procedure 33, which provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. The district court has discretion over whether to grant a new trial. United States v. Smith, 451 F.3d 209, 216–17

(4th Cir. 2006). However, a court "should exercise its discretion to grant a new trial sparingly, and it should do so only when the evidence weighs heavily against the verdict." United States v. Chong Lam, 677 F.3d 190, 203 (4th Cir. 2012) (internal citations and alterations omitted); United States v. Arrington, 757 F.2d 1484, 1485 (4th Cir. 1985). Unlike a motion under Rule 29, a court considering a Rule 33 motion "may consider the credibility of witnesses and need not view the evidence in the light most favorable to the government in determining whether to grant a new trial." United States v. Whyte, No. 4:12-CR-00021-2, 2018 WL 521593, at *4 (W.D. Va. Jan. 23, 2018) (quoting United States v. Souder, 436 F. App'x 280, 289 (4th Cir. 2011) (unpublished)).

In analyzing whether newly discovered evidence requires a new trial, the Fourth Circuit looks to five factors:

> (a) the evidence must be, in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

United States v. Custis, 988 F.2d 1355, 1359 (4th Cir. 1993) (quoting United States v. Bales, 813 F.2d 1289, 1295 (4th Cir. 1987)). "Without ruling out the possibility that a rare example might exist, we have never allowed a new trial unless all five elements were established." United States v. Fulcher, 250 F.3d 244, 249 (4th Cir. 2001). For example, "[i]f the government's case rested entirely on the uncorroborated testimony of a single witness who was discovered after trial to be utterly unworthy of being believed because he had lied consistently in a string

of previous cases, the district judge would have the power to grant a new trial…." Custis, 988

F.2d at 1359 (quoting United States v. Taglia, 922 F.2d 413, 415 (7th Cir. 1991)).

### C.  BRADY VIOLATION

Jordan argues he is also entitled to acquittal or a new trial on some or all of the charges

as a remedy for a Brady violation. The Due Process Clause requires the government to disclose

to the defense prior to trial any exculpatory or impeaching evidence in its possession. See

Giglio, 405 U.S. at 153–55; Brady, 373 U.S. at 86–88 (requiring the disclosure of exculpatory

evidence). Due process is violated, however, only if the evidence in question: (i) is favorable

to the defendant because it is either exculpatory or impeaching, (ii) was suppressed by the

Government, and (iii) is material. Strickler v. Greene, 527 U.S. 263, 281–82 (1999). The Brady

rule is not intended to "displace the adversary system as the primary means by which truth is

uncovered, but to ensure that a miscarriage of justice does not occur." United States v. Bagley,

473 U.S. 667, 675 (1985) (footnote omitted).

"Favorable" evidence includes not only that evidence tending to exculpate the accused,

but also any evidence adversely affecting the credibility of the government's witnesses. United

States v. Trevino, 89 F.3d 187, 189 (4th Cir. 1996) (quoting Bagley, 473 U.S. at 676).

Suppression requires showing that the government knew about the evidence, that the

defendant did not know about the evidence, and that the government failed to disclose it.

United States v. Burns, No. 6:13-CR-00022, 2016 WL 3910273, at *5 (W.D. Va. July 14, 2016)

(citing Comstock v. Humphries, 786 F.3d 701, 709 (9th Cir. 2015); see also Strickler, 527 U.S.

at 281–82 (suppression occurs "either willfully or inadvertently"); United States v. Agurs, 427

U.S. 97, 103 (1976) (suppressed evidence is "information which had been known to the

prosecution but unknown to the defense"). Finally, evidence is "material" if there is a reasonable probability that it will affect the result of the proceeding. See Bagley at 682. The Supreme Court has stated:

> The materiality inquiry is not just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions. Rather, the question is whether "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."

Strickler, 527 U.S. at 290 (quoting Kyles, 514 U.S. at 434). A reasonable probability is one sufficient to "undermine confidence" in the outcome. Id. at 435; see also id. at 434 ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.").

Unlike Rule 33 generally, Brady covers impeachment as well as exculpatory evidence. See, e.g., Giglio v. United States, 405 U.S. 150, 154 (1972). Brady also applies regardless of the prosecutor's motivations. See, e.g., United States v. Agurs, 427 U.S. 97, 110 (1976). Knowledge of the exculpatory evidence does not only concern the prosecutor; "the knowledge of some of those who are part of the investigative team is imputed to prosecutors regardless of prosecutors' actual awareness." U.S. v. Robinson, 627 F.3d 941, 952 (4th Cir. 2010); see also Kyles v. Whitley, 514 U.S. 419, 437 (1995) ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.").

16

## III.   ANALYSIS

The court will first address whether Jordan's constitutional rights were violated by the government's failure to disclose the 2018 Perry Hash video prior to trial. The alleged <u>Brady</u> violation is the basis for Jordan's request for acquittal under Rule 29 or a new trial under Rule 33. "When a <u>Brady</u> or <u>Giglio</u> violation forms the basis of a Rule 33 motion, however, 'the proper legal standard is more favorable to the defendant than'" an independent Rule 33 motion for a new trial based on new evidence. <u>United States v. Bartko</u>, No. 5:09-CR-321, 2012 WL 13185533, at *43 (E.D.N.C. Jan. 17, 2012) (citing <u>United States v. Cohn</u>, 166 F. App'x 4, 12 (4th Cir. 2006) (per curiam) (unpublished); <u>see also</u> <u>United States v. Sutton</u>, 542 F.2d 1239, 1242 n. 3 (4th Cir. 1976). Moreover, "[w]hen the [Rule 33] motion attacks the weight of the evidence, the court's authority is much broader than when it is deciding a motion to acquit on the ground of insufficient evidence." <u>United States v. Arrington</u>, 757 F.2d 1484, 1485 (4th Cir. 1985). Because the <u>Brady</u> standard is less exacting, if the court does not find a <u>Brady</u> violation, it need not address Jordan's separate request for relief under Rule 33 or Rule 29. Additionally, as the court has already ruled on Jordan's Rule 29 motion as to Count Six, there would be no grounds to revisit that decision absent a <u>Brady</u> violation.

The government concedes that the video constitutes <u>Brady</u> material, but denies that it suppressed the evidence or that the disclosure of the video prior to trial would have altered the outcome of the proceedings. The government asserts that failure to disclose the video was an inadvertent mistake, denying Jordan's assertion that the government intentionally withheld this evidence. The prosecutors state they were not aware of the existence of the video until they made a specific inquiry with the DEA after Jordan's second <u>pro se</u> motion. At the hearing,

Agents Sanders and Crowder testified that they lost track of the video amidst the ongoing investigation and personnel changes on the investigative team. The court found during the December 1, 2020, evidentiary hearing (hereinafter "December hearing") that there was no evidence of bad faith or intentional misconduct by the government.

Suppression requires showing that the government knew about the evidence, that the defendant did not know about the evidence, and that the government failed to disclose it. Burns, 2016 WL 3910273, at *5 (citing Comstock, 786 F.3d at 709(9th Cir. 2015); see also Strickler, 527 U.S. at 281–82 (suppression occurs "either willfully or inadvertently"); United States v. Agurs, 427 U.S. 97, 103 (1976) (suppressed evidence is "information which had been known to the prosecution but unknown to the defense"). The knowledge of federal and state agents working with the prosecution is imputed to the government's counsel under Brady and Giglio. Burns, 2016 WL 3910273, at *4 (citing Kyles v. Whitley, 514 U.S. 419, 437 (1995)). In both United States v. Sutton, 542 F.2d 1239 (4th Cir. 1976), and Boone v. Paderick, 541 F.2d 447 (4th Cir. 1976), the Fourth Circuit overturned a defendant's criminal conviction on the ground that police had suppressed exculpatory information bearing on the veracity of a witness's testimony. See Sutton, 542 F.2d at 1241 n. 2, 1243; Boone, 541 F.2d at 453. The Fourth Circuit reiterated that where "material evidence which tends to exculpate the defendant is not disclosed," the failure to disclose it "is not neutralized because it was in the hands of the police rather than the prosecutor." Boone, 541 F.2d at 450–51. Suppression occurs "irrespective of the good faith or bad faith of the prosecution." Spicer v. Roxbury Corr. Inst., 194 F.3d 547, 555 (4th Cir. 1999) (quoting Brady, 373 U.S. at 83). Therefore, the fact that the prosecutors were diligent, and that the DEA's error was an inadvertent does not negate the

suppression. Again, it bears repeating that there was no intentional suppression by the DEA agents or the government attorneys. Rather, this was an inadvertent mistake unknown to the government attorneys at the time of trial. Mistakes happen, and there is no hint of prosecutorial misconduct. Indeed, as soon as the government became aware of the existence of the 2018 Perry Hash video, it notified the court and defense counsel.

In any event, the government argues that there was no actual suppression in this case because Jordan was aware of the content of the 2018 Perry Hash interview from his jail pod discussions with Hash, and evidence a defendant knows or should know cannot be suppressed. "Common sense dictates that the prosecution cannot suppress information that is known to the defendant." United States v. Garrett, No. 2:12-CR-00030, 2013 WL 5720003, at *9 (S.D. W. Va. Oct. 21, 2013), aff'd, 606 F. App'x 71 (4th Cir. 2015) (citing United States v. Wilson, 901 F.2d 378, 381 (4th Cir.1990) (finding a defendant is not entitled to the benefit of Brady where exculpatory information is available to him or lies in a source where a reasonable defendant might have looked); see also United States v. Jones, 34 F.3d 596, 600 (8th Cir. 1994) (finding no Brady violation when the defendant is in a position of parity with the government as far as access to the contested material). In support, the government represents that it had disclosed to Jordan a short report indicating that a post-arrest interview occurred in 2018, which it argues should have put Jordan on notice of the existence of this interview. See Report of Investigation, ECF No. 329-4.[3] The government also claims Jordan had actual knowledge about this interview as early as January 2018, when Hash, who was housed in the same pod as

---

[3] Again, the short report that was produced, ECF No. 329-4, only establishes that an interview occurred as it contains no substantive details of the Hash interview.

Jordan in Roanoke City Jail, allegedly told Jordan that he had told the DEA that he owned the guns for self-protection and that Jordan was not involved in their purchase or use. See Hash's July 2, 2020, Interview, ECF No. 329-2 at 1.

The court finds that Jordan's belief in the existence of an exculpatory interview between Perry Hash and the DEA does not constitute knowledge of the substance of the 2018 Perry Hash video sufficient to avoid a suppression finding. Jordan claims he communicated to his counsel regularly that he believed Hash made exculpatory statements to the government. Given that the two defendants were charged with related crimes and placed in the same pod, it is "was not unreasonable under the circumstances" for defense counsel to believe Hash may have been lying. United States v. Crasten, No. 1:12CR00034, 2013 WL 462056, at *9 (W.D. Va. Feb. 5, 2013). Counsel for Jordan had designated Hash as an unfriendly witness for the defense based on Hash's 2017 post-arrest statements, and therefore did not explore his later arrest any further. Moreover, the government consistently represented that it had disclosed all Brady material, including in response to Jordan's motion for specific discovery. At the hearing, Agents Sanders and Crowder confirmed a substantive post-interview report should have been written and disclosed after the 2018 Perry Hash interview but was not. Given the government's assertions regarding discovery and the lack of a post-interview report, the court finds that the report stating a post-arrest interview had taken place was insufficient to impute knowledge of the interview to Jordan. Additionally, while Jordan may have believed an interview took place between law enforcement and Hash that was helpful to him, he could not have known the strength of Hash's exculpatory statements regarding his lone role in the acquisition of the guns charged in Count Six, manifest in the videotaped interview. Further, he was not aware of Agent

Crowder's statements that Jordan was not known to be a "gun guy." "In other words, the defendant[] did not know nor 'should have known the essential facts permitting [him] to take advantage of [the] exculpatory evidence.'" Id. (quoting Wilson, 901 F.2d at 380). Accordingly, the court finds the evidence was suppressed.

The court must then determine whether the Perry Hash video was material to any count for which Jordan was convicted. Although the Fourth Circuit has not explicitly ruled on this issue, other circuit courts and courts in this district have analyzed each count separately for Brady materiality. See, e.g., United States v. Dunham, 573 F. App'x 256, 258 n.2 (4th Cir. 2014) (affirming a decision in which the district court vacated the jury's verdict and dismissed Count Seven, as it was the only count of the indictment affected by the Brady evidence); United States v. Robinson, 627 F.3d 941, 948 (4th Cir. 2010) (finding evidence that might have constituted a Brady violation to charges voluntarily dismissed by the government was not material as to the remaining charges); United States v. Pelullo, 105 F.3d 117, 123–24 (3d Cir. 1997) (finding a Brady violation and reversing the only count on which the evidence would have had a material impact); United States v. Wayne, 903 F.2d 1188, 1192–93 (8th Cir. 1990) (affirming the district court's grant of a new trial only on the counts impacted by the Brady material); United States v. Crasten, No. 1:12-CR-00034, 2013 WL 462056, at *9 (W.D. Va. Feb. 5, 2013) (granting a new trial as to Count Four only after finding a Brady/Giglio violation); United States v. Laurent, 607 F.3d 895, 899-901 (1st Cir. 2010) (affirming conviction on seven drug counts following district court's dismissal of one drug count due to government's failure to disclose and destruction of evidence material to that count); United States v. Lyons, 352 F. Supp. 2d 1231, 1244 (M.D. Fla. 2004) ("If the Government fails to disclose material evidence

under <u>Brady</u> and <u>Giglio</u>, that is a constitutional violation which requires an affected conviction to be set aside. It is, however, possible for such a <u>Brady</u> or <u>Giglio</u> violation to affect fewer than all the counts in a multi-count case.") (internal citations omitted). The Fourth Circuit has also held that other prosecutorial constitutional violations can be remedied by granting a new trial as to only the affected counts. <u>United States v. Gibson</u>, 328 F. App'x 860, 864 (4th Cir. 2009) ("Given the vast amount of evidence available to support the convictions on the remaining twelve counts, which were not directly addressed by Arnoto's testimony, one cannot reasonably conclude that the statements would have made a difference to the jury's analysis on the remaining counts.").

Jordan claims the suppression of the 2018 Perry Hash video is plainly material as to Count Six because Hash takes sole credit for the acquisition and possession of the guns. Beyond Count Six, Jordan argues that the Hash video is material to all of the other counts because its disclosure would have affected his defense of the case. In addition to taking responsibility for the guns, Perry Hash states that Jordan's home had been burglarized. Counsel for Jordan indicates he would have explored the circumstances of Hash's arrest further, considered using Hash as a witness for the defense, investigated Jordan's claims of law enforcement burglarizing his home further, identified the individuals Agent Crowder mentions in the Hash interview that told law enforcement Jordan was not a "gun guy," and potentially permitted Jordan to take the stand in his defense at trial. In short, Jordan believes the Perry Hash video corroborates his narrative of law enforcement burglarizing his home to

illegally obtain search warrants, which casts doubt on the admissibility of a large swath of the government's evidence.[4] He insists that a new trial on all counts is the only proper remedy.

Conversely, the government claims that the video would not have materially altered the outcome of the trial on any counts. The government points to the evidence it put on at trial, including but not limited to approximately twenty witnesses, including accomplices who assisted his drug trafficking, experts who testified to the identity of the drugs and the value of firearms in the drug trade, and the law enforcement officers who investigated his crimes. The jury was presented direct evidence of Jordan throwing a drug package out of his vehicle during a police pursuit.[5] The government also presented recorded conversations obtained pursuant to the wiretap between Jordan and co-conspirators, business records reflecting suspicious transfers of cash to sources in Arizona, surveillance of Jordan's numerous trips to New York and other locations, and expenditures far exceeding Jordan's legitimate sources of income. In light of the weight of the government's evidence, it claims the Hash video would have had no bearing on the outcome of the drug convictions.

Regarding the gun conviction, the government points to the evidence it presented at trial including expert testimony from Agent Crowder regarding methods and patterns of drug

---

[4] Jordan also claims that the lack of disclosure of the Hash video makes more likely his suspicions that the government is withholding other exculpatory evidence, including (1) missing text messages between himself and Chelsea Fry, a witness for the government, in which he discussed his fear that law enforcement had broken into his home; (2) administrative subpoenas executed by AUSA Neese, which Jordan contends contain fraudulently obtained and false statements, and which counsel has requested but not received; and (3) video footage the government denies exists of two prison visits between Cassandra Abernathy and Chelsea Fry, which Jordan claims would be favorable to him and does in fact exist upon representation made to him by facility officials he directly called. The government has since procured the administrative subpoenas and maintains that it has not located the other evidence mentioned despite inquiry.

[5] Jordan threw a "sham" package of narcotics out the window. Investigators had intercepted a package sent to Jordan of real narcotics, verified by lab analysis, and replaced that package with "sham" narcotics for delivery to Jordan's residence.

dealer uses of firearms, conversations between Hash and Jordan in which Jordan discusses the type of firearms and dictates the price, and evidence that Jordan offered to pay $5,500 in legal fees related to Hash's firearm charge. Further, the government implies it could have successfully impeached Hash's statements made during the 2018 post-arrest interview by introducing inconsistent statements made by Hash in which he indicates he did not purchase the firearms for himself. The government contends that the weight of the evidence related to the gun charge was so substantial that the Hash video would not have altered the outcome of the trial.

The court finds that the Perry Hash video does not contain material sufficient to cast doubt on the jury's verdict as to every count for which Jordan was convicted. To demonstrate materiality, Jordan must show that there is a reasonable probability the new evidence would have undermined confidence in each conviction. Strickler, 527 U.S. at 290. In the interview, Hash confirms that his house and Jordan's house had been broken into and that they had called the police to no avail. While the video does indeed corroborate Jordan's claim that he believed his house had been burglarized, it is insufficient to implicate law enforcement in the claimed burglary or otherwise undermine the integrity of the government's investigation. Jordan has failed to produce any evidence, though he has been afforded several opportunities, to substantiate his claim that the burglary was perpetrated by law enforcement. Absent sufficient evidence to make such a claim plausible, the court finds Jordan's allegations of government misconduct remain mere speculation.

Further, Jordan is unable to show how proving the burglary, if indeed he had been able to do so, would have made acquittal probable. As the government points out, Jordan does not

tie the alleged misconduct to any specific piece of evidence that he believes would have been rendered inadmissible. "Whatever pretrial strategy, action, or inaction defendant may have taken had the United States disclosed the fact at issue, there is no reasonable probability that it would have resulted in defendant's acquittal. There was ample evidence to support the jury's verdict, including: audiotapes, videotapes from the security camera, police surveillance testimony, pen register data, the drugs, expert testimony regarding content and weight, etc." United States v. Gibson, No. CR 1:05-00126-001, 2007 WL 9710735, at *6 (S.D.W. Va. Feb. 26, 2007), aff'd, 328 F. App'x 860 (4th Cir. 2009). At trial, the government presented voluminous evidence, much of it obtained independently of the search warrants Jordan claims arose out of the burglary. The court finds that the Brady evidence is not material as to the drug convictions, because Jordan has not met his burden of showing the Perry Hash video would have created a reasonable probability of his acquittal on those counts.

However, the court finds the Perry Hash video is material as to Count Six, which charged Jordan with possession of a firearm in furtherance of a drug trafficking crime. The content of the Perry Hash video bears on this charge directly and undermines the government's case that Jordan purchased the guns through Hash to support his drug enterprise. In the interview, Hash explicitly and repeatedly claims that he purchased the guns without Jordan's involvement and that he intended to use them for self-protection given the crime in his neighborhood. He denied ever seeing Jordan possess a firearm and emphasized he had not purchased the firearms for Jordan's use, though he did admit he would let his friend Jordan use a firearm. In this interview, Agent Crowder, an important witness for the government at trial, said that he has heard from multiple sources that Jordan is not a "gun

guy." At the December hearing, Agent Crowder claimed he was lying to earn goodwill with Hash. However, the interview still constitutes expressly exculpatory evidence because of the statements by Hash and Agent Crowder. And it also constitutes impeachment evidence as record of a prior inconsistent statement made by the government's case agent.

At trial, the government did not have direct evidence of Jordan's actual possession of firearms or use of any firearms in support of his drug enterprise.[6] It relied principally on circumstantial evidence to show that: (1) Jordan constructively possessed the firearms by presenting evidence of his discussions with Hash about their features and price, and (2) he used them for drug trafficking by presenting expert testimony that drug dealers often use firearms similar to the ones at issue here for protection, currency, or intimidation. Direct testimony contradicting a largely circumstantial case is material. Monroe v. Angelone, 323 F.3d 286, 302 (4th Cir.2003); see also Spicer v. Roxbury Corr. Inst., 194 F.3d 547, 559–61 (4th Cir.1999) (suppressed impeachment evidence was material because no physical evidence existed and eyewitness testimony was weak). A co-conspirator, though not a defendant in the instant action, making statements against his own interest would weigh heavily against the government's circumstantial evidence. The government claims it would have been able to impeach Hash successfully with inconsistent statements denying the guns were his, but his averment to law enforcement that the guns were his may have introduced reasonable doubt in the mind of the jury. The Perry Hash video is material as to Count Six because it unsettles the reliability of the jury verdict as to that count.

---

[6] The government's evidence related to Count Six is explored in more detail in the court's initial Order and Memorandum Opinion denying Jordan's first motion for acquittal or new trial. ECF No. 300.

In light of Jordan's renewed Rule 29 motion and the court's finding that the <u>Brady</u> evidence was only material as to Count Six, it will exercise its discretion to vacate and dismiss Jordan's conviction on that charge. <u>United States v. Dunham</u>, No. 1:12-CR-11, 2013 WL 4804723, at *5 (N.D. W. Va. Sept. 4, 2013), <u>aff'd</u>, 573 F. App'x 256 (4th Cir. 2014) (vacating and dismissing Count Seven upon finding a <u>Brady</u> violation rather than granting the motion for new trial).

## IV.

For the reasons stated herein, the court **GRANTS in part** and **DENIES in part** Jordan's motion for judgment of acquittal or, in the alternative, for a new trial. The court **VACATES** and **DISMISSES** Jordan's conviction on Count Six of the Third Superseding Indictment, finding the government's failure to disclose the Perry Hash video constitutes a <u>Brady</u> violation bearing materially on this charge. The court **DENIES** Jordan's motion as to all other charges, finding that the Perry Hash video is not material as to the drug convictions. The case will be set down for sentencing on the drug convictions in Counts One, Three, Four, and Five. An appropriate Order will be entered.

Entered:   December 31, 2020

Michael F. Urbanski
Chief U.S. District Judge
2020.12.31 15:38:51 -05'00'

Michael F. Urbanski
Chief United States District Judge