**EXHIBIT-C**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | :   Case No. 7:17-CR-00056 |
| | : |
| MONTA ORLANDO JORDAN | : |

## RESPONSE TO MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, A NEW TRIAL

The defendant, Monta Orlando Jordan, has moved the court for the entry of an order entering a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 or, in the alternative, for a new trial "in the interest of justice" pursuant to Fed. R. Crim. P. 33. *Mot. Judgment of Acquit.* ECF No. 270. The motion is based on three broad categories of claimed errors: first, the failure of the court to grant his pretrial motions for discovery and to suppress certain evidence obtained from court authorized Title III wire intercepts and GPS tracking devices, *id.* at 1-3; second, challenges to the sufficiency of the evidence to support his convictions as to Counts One and Six of the Third Superseding Indictment, *id.* at 3-4, 9-13; and, third, the failure of the court to grant his motion for a mistrial based upon the admission of certain testimony from two government witnesses. *Id.* at 5-9.

Jordan's motion is without merit and should be denied. Each of his claims will be addressed *seriatim* in the sections which follow.

1

## BACKGROUND

On January 2, 2020, Jordan was charged in a Third Superseding Indictment[1] with criminal offenses arising from his role in a wide-ranging drug trafficking conspiracy. ECF No. 175. Relevant to this motion, Jordan was charged, as follows:

### COUNT ONE
(Conspiracy)

1.      Beginning at a date unknown, but no later than early summer in 2016 and continuing to on or about March 14, 2018, in the Western District of Virginia and elsewhere, the defendants, MONTA ORLANDO JORDAN, a/k/a "Ghost," and CLIFTON GUERRANT MYERS, did knowingly and intentionally combine, conspire, confederate, and agree with each other, and other persons not herein named, both known and unknown to the Grand Jury, to possess with intent to distribute and to distribute one or more controlled substances, to wit:

   a. 1000 grams or more of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A);

   b. 400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (Fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A);

   c. 500 grams or more of a mixture and substance containing detectable amount of

---

1 The initial indictment against Jordan was returned on February 7, 2017. ECF No. 22. It was superseded on January 18, 2018. A second superseding indictment was returned on June 26, 2018. ECF No. 78. For purposes of his motion, the relevant charges in the Third Superseding Indictment are identical to those contained in the Second Superseding Indictment.

2

methamphetamine, a Schedule II controlled substance, in violation of Title 21, United

States Code, Sections 841(a)(1) and 841(b)(1)(A); and

d.  500 grams or more of a mixture and substance containing a detectable amount of

cocaine, a Schedule II controlled substance, in violation of Title 21, United States

Code, Section 841(a)(1) and 841(b)(1)(B).

. . . .

4.      All in violation of Title 21, United States Code, Sections 846 and 841(a)(1),

(b)(1)(A), and (b)(1)(B).

## COUNT SIX
### (Possess Firearm in Furtherance of Drug Trafficking Crime)

1.      On or about July 12, 2017, in the Western District of Virginia, the defendant,

MONTA ORLANDO JORDAN, a/k/a "Ghost," as a principal and as an aider and abettor, did

knowingly possess a firearm, that being a Roman/Cugir, model Mini Draco, 7.62 semi-automatic

rifle and a German Sporting Gun, model GSG-522, .22 caliber semi-automatic rifle, in furtherance

of a drug trafficking crime for which he may be prosecuted in a court of the United States, as set

forth in COUNT ONE of this THIRD SUPERSEDING INDICTMENT.

2.      All in violation of Title 18, United States Code, Section 924(c) and Title 18,

United States Code, Section 2.

Over six days of trial, the government presented evidence and testimony from law

enforcement and cooperating witnesses. Law enforcement agents how they carefully gathered

evidence of Jordan's drug trafficking activities through the use of real-time surveillance of him

and his known associates, including Clifton Myers, Perry Hash and Chelsea Fry. They used

electronic surveillance tools, including court authorized pen registers and a wiretap to record

3

communications between Jordan and the primary members of the conspiracy. The information gleaned from those investigative techniques aided their observations of Jordan and/or his confederates, a) surreptitiously mailing large sums of cash to suppliers in Arizona on July 10 and July 17, 2017; b) traveling to New York and returning to Virginia on August 5, 2017 with two kilograms of fentanyl; c) picking up a package from Arizona on August 10, 2017 that was found to contain one-half kilogram each of cocaine and heroin; and, d) attempting to dispose of those drugs by throwing them into a creek that same day.

A cooperating witness testified that she was transporting what was found to be two kilograms of fentanyl at the behest of Jordan. Her testimony was corroborated by wiretaps and surveillance involving Jordan and his co-conspirator, Clifton Myers. Other cooperators told the jury about the types and quantities of drugs that Jordan was distributing. These cooperators included A.W. (methamphetamine and heroin) L.C. (methamphetamine), W.R. (heroin) and E.G. (methamphetamine, cocaine and heroin). Their testimony is likewise corroborated by documents and wiretap evidence obtained during the investigation. The jury also learned that Jordan was spending lavishly on automobiles and vacations while having no source of legitimate income to support that spending.

Expert and fact witnesses further educated the jury about methods and patterns of drug distribution, including the manner in which firearms factor into drug operations such as Jordan's. First Sergeant Joseph Crowder and W.R. spoke from personal and professional experience about the commonplace use of firearms to further drug trafficking, for protection and to facilitate profitable sales. From his experiences with Jordan specifically, W.R. described Jordan as a high-level dealer who possessed firearms within the ambit of the conspiracy. The jury then learned

4

that Jordan's most recent acquisition of firearms, made just prior to his takedown and arrest, consisted of two assault weapons and a number of high-capacity magazines purchased at his direction by one of his closest associates, Perry Hash. The government provided details of this transaction through law enforcement testimony and Jordan's conversations with Hash, prior to and after Hash's related arrest.

Before submitting the case to the jury, the court instructed jury members as to elements of the crimes charged.

> For you to find the defendant guilty of the drug conspiracy charged in Count One, you must be convinced that the government has proven each of the following elements beyond a reasonable doubt:
>
> First, that at some time during the dates charged, two or more persons entered into an agreement or understanding to (1) distribute or (2) possess with intent to distribute a controlled substance;
> Second, that the defendant knew of the conspiracy; and
> Third, that the defendant was a voluntary participant in the conspiracy, knowing of its unlawful purpose and intending to help accomplish that purpose.

*Jury Instructions* at 36. ECF No. 261.

The court also instructed the jury as to the elements of Count Six.

> (T)he government has alleged that the defendant possessed one or more firearms, as a principal and as an aider and abettor, in furtherance of a drug trafficking conspiracy. For you to find the defendant guilty, the government must establish beyond a reasonable doubt:
>
> First, that the defendant committed the crime of conspiracy as alleged in Count One;
> Second, that the defendant, as a principal or as an aider and abettor, possessed one or more firearms; and
> Third, that the possession of one or more firearms, whether committed by the defendant or aided and abetted by him, was in furtherance of the crime of conspiracy as alleged in Count One.

The court informed the jury that, "the term 'to possess a firearm in furtherance of a drug trafficking crime' means that the firearm helped forward, advance or promote the commission of

5

the drug trafficking crime," but cautioned them that "mere possession of a firearm at the scene of

such a crime is not sufficient under this definition. The government must present evidence which

proves beyond a reasonable doubt that the firearm played some part in furthering the crime."

*Id.* at 51-52.

Because Jordan was charged both as a principal and as an aider and abettor, the jury was

instructed that

> There are two ways the government can prove the defendant committed the crime
> alleged in Count . . . Six.
>
> The first is by proving that the defendant personally committed or participated in the
> individual crime.
>
> The second way the government may prove the defendant's guilt is by showing that he
> "aided and abetted" the offense. To show this, the government must prove beyond a
> reasonable doubt that the defendant knowingly and deliberately associated himself in some
> way with the crimes charged and participated with the intent to commit these crimes. In
> order to be found guilty of aiding and abetting the commission of a particular crime, the
> government must first prove the substantive elements of the offense, as explained in these
> instructions.
>
> The government must then prove beyond a reasonable doubt that:
> ONE: The defendant knew that the crime charged was to be committed or was
> being committed;
> TWO: The defendant knowingly did some affirmative act for the purpose of
> aiding and encouraging the commission of that crime; and
> THREE: The defendant acted with the intention of causing the crime charged
> to be committed.
>
> The second element, the "affirmative act" element, can be satisfied without proof that
> the defendant participated in each and every element . . . . It is enough if the defendant
> assisted in the commission of Count . . . Six or caused these crimes to be committed. An
> affirmative act includes all assistance rendered by words, acts, encouragement, support, or
> presence.

*Id.* at 42-43.

The jury was again cautioned:

6

Merely being present at the scene of the crime or merely knowing that a crime is being committed or is about to be committed is not sufficient conduct for the jury to find that a defendant aided and abetted the commission of that crime. The government must prove that the defendant knowingly and deliberately associated himself with the crime in some way as a participant—someone who wanted the crime to be committed—not as a mere spectator.

*Id.*

Jordan was given an opportunity to object to these instructions, but he did not do so.

The jury returned its verdict on February 25, 2020, unanimously finding Jordan guilty on all charges, including conspiracy to possess with intent to distribute 1000 grams or more of a mixture or substance containing a detectable amount of heroin, 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, and 500 grams or more of a mixture or substance containing a detectable amount of cocaine (Count One) and possession of one or more firearms in furtherance of the conspiracy (Count Six). *Verdict Form.* ECF No. 264.

## ARGUMENT

I.  ## THE DISTRICT COURT'S RULINGS ON JORDAN'S PRETRIAL MOTIONS WERE CORRECT.

A.  ### THE COURT PROPERLY DENIED JORDAN'S MOTION FOR DISCOVERY OF THE INVESTIGATIVE NOTES OF LAW ENFORCEMENT OFFICERS AND AUSA ASHLEY NEESE.

Jordan's first argument is that the court erred in denying his request for the investigative notes of law enforcement officers and the AUSA who was initially involved in the case against him. *Mot. Judgment of Acquit* ¶ 1.A.

This claim was made by Jordan in a Motion for Discovery, ECF No. 171, filed on December 27, 2019. The government produced most of the items that he requested, but opposed production of the notes of the agents and Ms. Neese. *Gov't Response to Mot. Discovery* ECF No. 7

202.

After conducting an evidentiary hearing on February 5, 2020, the court denied the motion.

The government represents that all official reports and extant audio recordings have been produced. United States v. Hinton, 719 F.2d 711, 722 (4th Cir. 1983)("[T]he investigative notes of a government agent, made in the course of interviewing witnesses, which are later incorporated in the agent's formal 302 report, are not statements within the meaning of Section 3500( e) (1 )"). As the government represents that the formal reports have been produced, Jordan has not established at this point that the agent's rough notes are statements required to be produced under the Jencks Act, 18 U.S.C. § 3500, such as by demonstrating that the agent read and adopted the notes in testifying. Nor has Jordan requested, much less provided any plausible basis for requesting, an in camera comparison between the official interview reports and the agent's notes. United States v. Savage, 885 F.3d 212, 220 (4th Cir. 2018) ("[A] defendant must provide some foundation for his Jencks Act request before the district court is required to make an in camera inspection. Such a foundation, typically established through cross examination of the witness whose statement the defendant is attempting to obtain, requires the defendant to specify with reasonable particularity that material which may be a Jencks Act statement exists."(quoting United States v. Smith, 31 F.3d 1294, 1301 (4th Cir. 1994)(internal citations omitted)).

*Order.* ECF No. 213 at 2-3.

In his motion for judgment of acquittal or new trial, Jordan does not cite any facts or law which the court failed to consider in denying his motion in the first instance. Instead, he only "reasserts" his prior claim that such items should have been turned over to him and the court's denial of his request was error.   The government disagrees. The court provided Jordan with every opportunity, including an evidentiary hearing, to provide a legal or factual basis to support his claim. He has failed to do so and his request for relief on this ground should be denied.

B. THE COURT PROPERLY DENIED JORDAN'S AMENDED MOTION FOR DISCLOSURE OF INFORMATION THAT HE CLAIMS IS SUBJECT TO DISCLOSURE UNDER *BRADY v. MARYLAND* AND *GIGLIO v. UNITED STATES*.

Jordan's second argument is that the court erred in denying his request for what he characterizes as information subject to disclosure under *Brady v. Maryland,* 373 U.S. 83 (1963)

8

and *Giglio v. United States*, 405 U.S. 150 (1972). *Mot. Judgment of Acquit*. ¶ 1.B.

This claim was made by Jordan in an Amended Motion for Disclosure filed on January 24, 2020, in which he asserted

> (U)pon information provided by the Defendant, there is reason to believe that the investigators who participated in this matter were involved in "outrageous misconduct" that included but was not limited to the investigators (i) burglarizing the Defendant's home, (ii) carrying on inappropriate relationships with potential witnesses and/or confidential informants and (iii) making inappropriate promises or assurances to those witnesses/informants by the aforementioned officers.

ECF No. 191, ¶ 5.

The government denied Jordan's allegations by response filed on January 28, 2020, arguing that Jordan failed to provide any legal or factual basis for his requests beyond his unsubstantiated allegations against the officers. *Resp. to Deft's. Mot. For Early Discl. of Giglio*, ECF No. 203.

After conducting an evidentiary hearing on February 5, 2020, the court denied Jordan's motion. The court credited the government's representation that the information Jordan was seeking simply did not exist. Further, the court found that the evidence presented at the evidentiary hearing "does not support Jordan's allegations" of wrongdoing against the officers. *Order*. ECF No. 214 at 4.

In his motion for judgment of acquittal or new trial, Jordan does not cite any facts or law which the court failed to consider in denying his motion in the first instance. Instead, he only "reasserts" his prior claim that such items should have been turned over to him and the court's denial of his request was error. The government disagrees. The court provided Jordan with every opportunity, including an evidentiary hearing, to provide a legal or factual basis to support his claim. He has failed to do so and his request for relief on this ground should be denied.

9

C. THE COURT PROPERLY DENIED JORDAN'S AMENDED MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF THE COURT-AUTHORIZED INTERCEPTION OF WIRE COMMUNICATIONS PURSUANT TO TITLE III.

Jordan's third argument is that the court erred in denying his motion to suppress any evidence derived from the court authorized intercept of wire and electronic communications under Title III. *Mot. Judgment of Acquit*. ¶ 1.C.

This claim was made by Jordan in an Amended Motion to Suppress, ECF No. 192, filed on January 24, 2020, in which he restated his allegations of misconduct against the investigating officers, advanced claims that certain important information was withheld from the affidavit that was submitted to the court, and asserted that the wiretap was authorized as a result of the incorrect and unreliable information contained in the affidavit. ECF 192 at 5, ¶ 14.

The government filed a written response on January 27, 2020. *Resp. To Amend. Mot. To Suppress,* ECF 197. Following an evidentiary hearing on February 5, 2020, the court denied Jordan's motion.

> The court finds that the issuance of the wiretap was appropriate and based on sufficient probable cause. The government's affidavit in support of the issuance of the wiretap was exhaustive and met the requirements to establish probable cause pursuant to 18 U.S.C. § 2518.The affidavit detailed the information provided by the four SOIs and the CS, along with evidence of Jordan's drug trafficking activities gleaned from related wire interceptions conducted by the Baltimore, Maryland Police Department between May and October 2016,select text messages from Jordan's phones that appeared to be coded and related to drugs and/ or drug trafficking activities, a telephone toll analysis, and other evidence obtained during law enforcements' investigation of Jordan. Accordingly, the court finds that the wiretap was based on sufficient probable cause and will deny Jordan's motion to suppress the evidence gathered by law enforcement as a result of the wiretap.

*Order.* ECF No. 215 at 3-4.

In his motion for judgment of acquittal or new trial, Jordan does not cite any facts or law which the court failed to consider in denying his motion in the first instance. Instead, he only

10

"reasserts" his prior claim that the court's denial of his motion to suppress was error.   The

government disagrees. The court provided Jordan with every opportunity, including an evidentiary

hearing, to provide a legal or factual basis to support his claim. He has failed to do so and his

request for relief on this ground should be denied.

    D. THE COURT PROPERLY DENIED JORDAN'S AMENDED MOTION TO
       SUPPRESS EVIDENCE OBTAINED AS A RESULT OF THE COURT-
       AUTHORIZED INSTALLATION OF GPS TRACKING DEVICES ON CERTAIN
       OF HIS VEHICLES.

Jordan's fourth argument is that the court erred in denying his motion to suppress any

evidence derived from the court authorized placement of GPS tracking devices on two of his

vehicles. *Mot. Judgment of Acquit*. ¶ 1.D.

This claim was made by Jordan in an Amended Motion to Suppress Number 2, ECF No.

193, filed on January 24, 2020, in which he claimed that the affidavits for the tracking devices

were lacking in probable cause and by implication, the "good faith exception" in *United States v.*

*Leon,* 468 U.S. 897 (1984) was inapplicable.

The government filed a written response on January 27, 2020. *Resp. To Amend. Mot. To*

*Suppress NO. 2,* ECF 199. Without attempting to defend the sufficiency of the affidavits, the

government argued instead that *Leon* applied and, therefore, any information produced by the GPS

devices would be admissible.[2]

Following an evidentiary hearing on February 5, 2020, the court denied the motion to

suppress, citing the bases of his denial in a memorandum opinion accompanying the order. ECF No.

222.  Noting that the information from the affiant / officer in the affidavits was "sparse," the court

---

2 Further, the government noted that Jordan failed to identify any evidence that was obtained as a result
of the GPS monitoring that would be admitted as evidence at his trial. His current motion likewise fails to
identify any such evidence that was introduced against him at trial.

nevertheless declined to apply the exclusionary rule, finding instead that the evidence presented at the February 5 hearing supported the conclusion that the officer "had a reasonable belief that probable cause existed at the time of application and his failure to disclose more information on the affidavit was inadvertent, not due to bad faith." *Id.* at 3.

In his motion for judgment of acquittal or new trial, Jordan does not cite any facts or law which the court failed to consider in denying his motion in the first instance. Instead, he only "reasserts" his prior claim that the court's denial of his motion to suppress was error. The government disagrees. The court provided Jordan with every opportunity, including an evidentiary hearing, to provide a legal or factual basis to support his claim. He has failed to do so and his request for relief on this ground should be denied.

II.  THE COURT PROPERLY DENIED JORDAN'S MOTIONS FOR JUDGMENT OF ACQUITTAL AS TO COUNT ONE FOLLOWING THE CONCLUSION OF THE GOVERNMENT'S CASE-IN-CHIEF AND AFTER THE RETURN OF THE JURY VERDICT.

A.  THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE JURY'S VERDICT AS TO COUNT ONE (CONSPIRACY) GENERALLY.

Jordan argues that the evidence presented at his trial "was not sufficient . . . to establish that the Defendant conspired with others to engage in the trafficking of cocaine, heroin, methamphetamine or fentanyl" as charged in Count One, and he should, therefore, be acquitted of that count. *Mot. Judgment of Acquit.* at 3. His argument is not supported by the record.

Motions for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 are assessed under a "sufficiency" of the evidence standard. Under the Rule, the court must set aside the verdict and enter an acquittal as to "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In reviewing the sufficiency of the evidence, however, the

court may not "make [its] own credibility determinations but must assume that the jury resolved all contradictions in testimony in favor of the Government." *United States v. United Med. & Surgical Supply Corp.*, 989 F.2d 1390, 1402 (4th Cir. 1993). A guilty verdict "must be sustained if the evidence, when viewed in the light most favorable to the Government, is sufficient for any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

In contrast, when considering a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33, a court may weigh the evidence and assess the credibility of the witnesses. When, in the court's assessment, "the evidence weighs so heavily against the verdict that it would be unjust to enter judgment," it has the discretion to grant a new trial. *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985); *see also Tibbs v. Florida*, 457 U.S. 31, 37–38 (1982). This discretion, however, "should be exercised sparingly." *Arrington*, 757 F.2d at 1486. A motion for a new trial based on the weight of the evidence should only be granted when the "evidence ... preponderate[s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Robertson*, 110 F.3d 1113, 1118 (5th Cir. 1997).

Jordan's arguments are misplaced with regard to his motion for judgment of acquittal as to Count One.3 In considering whether the evidence is sufficient to sustain a conviction upon such a motion, the Court "cannot make [its] own credibility determinations[.]" *United Med. & Surgical*

---

3 Although Jordan's motion may be construed as claiming that the evidence was insufficient to support ANY of his convictions, he apparently recognizes that any such claim as to Counts Three, Four or Five would be futile and offers no argument challenging those counts. The United States reserves the right to respond to any claims that Jordan may hereafter assert with regard to the viability of his convictions as to Counts Three, Four or Five.

13

*Supply Corp.*, 989 F.2d at 1402. Instead, the Court must "consider ... all of the evidence in the light most favorable to the government, assuming the jury weighed all of the evidence, resolved all conflicts in the testimony, and drew all reasonable inferences from the facts." *United States v. Wilson*, 115 F.3d 1185, 1190 (4th Cir. 1997). No particular quantum of evidence is required and the question is only whether "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)) (emphasis in original). Under this standard, "the uncorroborated testimony of one witness or ... accomplice may be sufficient to sustain a conviction[.]" *Wilson*, 115 F.3d at 1190 (citing cases).

Against this standard, it is clear that Jordan's motion is insufficient to obtain the relief he is seeking.   Indeed, the testimony of the cooperators alone provide a sufficient basis from which a rationale jury could have determined, either directly or by reasonable inference, that Jordan conspired with one or more others to possess with intent to distribute or to distribute the charged quantities of cocaine, fentanyl, heroin and methamphetamine. Their testimony is corroborated by substantial inculpatory evidence provided by the agents and the wiretaps, as well as Jordan's unexplained wealth. *United States v. Grandison*, 783 F.2d 1152, 1156 (4th Cir. 1986) (unexplained wealth is relevant in narcotics prosecutions as evidence of illegal dealings and ill-gotten gains). In sum, the quantum of evidence to support the charge of conspiracy in Count One is overwhelming, and Jordan's motion to dismiss on the basis of insufficiency of the evidence must be denied.

14

## B. THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE JURY'S VERDICT AS TO COUNT ONE (c) CONCERNING METHAMPHETAMINE.

The thrust of Jordan's argument concerning his conviction for conspiring to distribute methamphetamine is two-fold. First, he complains that, "the Government (i) did not produce an actual, tangible exhibit establishing the possession or sale of methamphetamine, (ii) did not produce a single witness or introduce a single laboratory confirmation that methamphetamine was involved in the case and (iii) only produced witness testimony from cooperating witnesses as to the presence of methamphetamine as part of the conspiracy alleged in Count 1 of the Superseding Indictment. He further complains that the prosecution failed to "establish the presence of or sale of methamphetamine by virtue of a controlled purchase made from the Defendant or one of the Defendant's co-conspirators or by virtue of a search warrant or by virtue of discovering the Defendant in possession of methamphetamine." Second, without citing any legal authority for his position, he asserts that, "without some independent corroboration, no reasonable jury could have concluded that the Defendant was responsible for trafficking methamphetamine, let alone more than 500 grams of the substance." *Mot. Judgment of Acquit.* at 4.   His argument is not supported by the record.

Jordan's challenge to Count One (c) limits itself to the question of whether the evidence was sufficient to establish that methamphetamine was among the controlled substances he conspired to distribute. With regard to establishing the identity of "controlled substances" for purposes of the Third Superseding Indictment, the court instructed the jury

> In determining whether the government has proved the substances in this case were controlled, you may consider lay testimony and any relevant circumstantial evidence. Such circumstantial proof may include evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence.

15

*Jury Instructions* at 38-39. *United States v. Scott,* 725 F.3d. 43, 46 (4th Cir. 1984)

Jordan complained that evidence concerning his role in trafficking methamphetamine was "built specifically and exclusively around the testimony of several cooperating witnesses who were neither chemists nor otherwise qualified as experts in the identification of methamphetamine. The government did not produce a single gram of methamphetamine as evidence at trial nor did they produce a single piece of evidence to confirm beyond a reasonable doubt that the substance(s) that were supposedly being trafficked by the Defendant were, in fact, methamphetamine." *Mot. Judgment of Acquit.* at 4.

Jordan overlooks the fact that the law does not require expert testimony to support a finding that one of the controlled substances he was trafficking was methamphetamine. Consistent with the law, *Scott,* 725 F.2d at 45, the court instructed the jury

> (N)either expert chemical analysis nor expert testimony is necessary for you to conclude that the substances involved in this case were, in fact, "controlled substances.

The record clearly establishes that Jordan conspired with a number of other persons to distribute 500 grams or more of methamphetamine. Indeed, testimony from his co-conspirators, A.W. and E.G., is sufficient for that purpose. *United States v. Banks,* 505 F. App'x 231, 233 (4th Cir. 2013)(testimony from one government witness, who stated that he supplied Banks and Morton with heroin, knew that they were distributing it, and was "confident" that he had sold them more than one kilogram of heroin during the course of the conspiracy, sufficient to establish drug quantity.)

16

The evidence to support Jordan's conviction for conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine is overwhelming. His motion to dismiss on the basis of insufficiency of the evidence must be denied.

## C. THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE JURY'S VERDICT AS TO COUNT SIX.

Jordan claims the Court erred by denying his motion for judgment of acquittal on Count Six because there was "not sufficient evidence to sustain a conviction." *Mot. Judgment of Acquit.* at 9. In his view, the only conclusion that can be drawn from the evidence is that the jury convicted him of this count solely because Chelsea Fry referenced during her testimony Jordan's prior statements to her about his felony status. *Id.* at 12. This argument is without merit and unsupported by the record.

"To possess a firearm in furtherance of a drug trafficking crime means that the firearm helped forward, advance or promote the commission of the drug trafficking crime." *Jury Instructions* at 51. The government must establish beyond a reasonable doubt that the firearm played some role in furthering the drug conspiracy crime. Its proof may be by direct or circumstantial evidence.

While probative, there is no requirement that guns and drugs be found in the same place contemporaneously. *See United States v. Howard*, 773 F.3d 519, 527-28 (4th Cir. 2014) (evidence sufficient for "in furtherance of" element where firearm found on property of known dealer even though no drugs were found in proximity). The range of factors is broader and includes "the type of drug activity that is being conducted, accessibility to the firearm, the type of weapon, whether the weapon is stolen, the status of possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under

17

which the gun is found."[4] *Id.* at 527-28; *see also United States v. Goodwin,* 452 F.Appx. 239, 247, 2011 WL 5188941 at *7 (4 Cir. 2011) ("Indeed, in *Jeffers* we found sufficient evidence to uphold a 924(c) conviction where no firearms or drugs were seized from the defendant, let alone together") (citing *United States v. Jeffers,* 570 F.3d 557, 565-66 (4th Cir. 2009)).

Jordan bases his insufficiency argument on the fact that the court took his Rule 29 motion under advisement, arguing that any hesitation by the court to deny the motion is evidence that the motion should have been granted. *Mot. Judgment of Acquit.* at 9-10. However, in considering whether the evidence is sufficient to sustain a conviction, the court does not substitute its own views for those of the jury. *United Med. & Surgical Supply Corp.,* 989 F.2d at 1402. The question is not, as Jordan suggests, whether the court took the matter under advisement. Rather, the court on a motion alleging insufficient evidence must "consider ... all of the evidence in the light most favorable to the government, assuming the jury weighed all of the evidence, resolved all conflicts in the testimony, and drew all reasonable inferences from the facts." *United States v. Wilson,* 115 F.3d 1185, 1190 (4th Cir. 1997). No particular quantum of evidence is required; the question is only whether "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319 (citing *Johnson v. Louisiana,* 406 U.S. 356, 362 (1972))

---

4 In *United States v. Howard,* for example, the court found sufficient evident evidence where the officers found a loaded pistol in the defendant's residence even though no drugs were found, where the only evidence showed he had sold some PCP from a shed in the backyard in the past, and there were a couple items that could be described as drug paraphernalia in a different room of the house. "While officers did not find drugs in Howard's home at the time of the search, the theory that the presence of the firearm served to protect Howard from a potential theft of his drug or profits, is nevertheless a plausible one." 773 F.3d 519, 527-28 (4th Cir. 2014). There is more significant evidence in this case, over and above the fact that the assault weapons purchased by Hash on July 12 2017 were found in the same vehicle Jordan used to transport multiple kilos of cocaine from the Valley View Mall after meeting this his drug courier there between March and August 2017.

18

(emphasis in original). Under this standard, "the uncorroborated testimony of one witness or ... accomplice may be sufficient to sustain a conviction[.]" *Wilson*, 115 F.3d at 1190 (citing cases).

In this case, several witnesses provided evidence to support Jordan's conviction for possession of a firearm in furtherance of the drug conspiracy, as a principal or as an aider and abettor, which may be based on direct or on circumstantial evidence. *United States v. Ellis*, 868 F.3d 1155 (10th Cir. 2017). Expert testimony may be one component of the government's proof. *United States v. Epps*, No. 03-4234, 2003 WL 22244897 at *1 (4th Cir. Sep. 23, 2003) (affirming common practice of using expert testimony of law enforcement agent to establish defendant's intent to use firearm to further drug trafficking crime).

First Sergeant Joseph Crowder provided expert testimony at the outset of trial on methods and patterns of drug dealers, including the possession of firearms for protection, as currency, and to facilitate drug sales. He explained that firearms are an important aspect of business for dealers with sources of supply in the Northeast because of opportunities for price arbitrage and the danger of long-distance narcotics transport. He likewise explained that higher-level dealers acquire firearms to protect concealed stashes of drugs and/or currency, while street dealers tend to carry guns on their persons for protection against the addicts they encounter day-to-day.

W.R. corroborated this information, testifying from his personal experience as a wholesale dealer in the drug and firearms trade from his teenage years. Consistent with evidence of Jordan's wiretap communications, W.R. explained that because large-scale distributors such as Jordan deal with smaller groups of individuals they trust, they use firearms primarily to protect assets and generate drug profits. From his experience as a firearms trafficker, he further explained the reasons that a dealer such as Jordan would prefer more compact assault weapons, like the mini

19

Draco, to full-size rifles. Having obtained narcotics from Jordan over time, W.R. knew Jordan to possess firearms during the course of the conspiracy and provided guns to him during this time frame in specific transactions.

Evidence of the conspiracy reflects this general testimony. The government admitted numerous recorded calls at trial indicating the close association between Perry Hash and Jordan in this conspiracy. They spoke frequently, about matters of criminal defense, their shared purchase of the assault weapons, and drugs. Not two weeks after his arrest for possession of the assault weapons, Hash contacted Jordan about an anticipated drug shipment on August 1. Hearing that Hash was waiting on a portion of this shipment, agents utilized a confidential source to place a narcotics order from Hash on August 2. Jordan was arrested just 8 days later, having been to New York for drugs with two of his co-conspirators on August 5 and back to Bedford on August 10 to retrieve another FedEx shipment.

Just prior to and after Hash's arrest, on July 10 and 17, Jordan and Fry shipped approximately $100,000 in concealed cash to addresses near the Mexican border, providing insight into the extent of Jordan's cash holdings at the time he and Hash purchased the assault weapons.[5] It was during this period that Jordan asked Fry, during a drug trip, if he had ever shown her "his nine."

Jordan's drug courier similarly testified that he had accepted as much as $320,000 from Jordan for a single payment on Jordan's multi-kilo orders of cocaine and heroin, and had not seen Jordan with less than $60,000. The courier had transacted business with Jordan and an African-

---

5 Hash purchased and was arrested in possession of the assault weapons on July 12.

20

American male in a silver Dodge Magnum between March and August 2017, the same vehicle Hash drove on the date of his July 2017 arrest.

Conversations between Jordan and Hash further revealed their illicit purpose. The make, model and price of the guns was established in their recorded calls. During the calls, Jordan identified the guns he wanted for himself and directed Hash to obtain them for a specified price. The guns were purchased privately through one of Hash's associates, further demonstrating an intent to acquire the weapons unlawfully, without any record of ownership.

Hash paid for the guns initially with his own money, acting as financier and broker for the purchase on Jordan's behalf. Conversely, when Hash was arrested for unlawful possession of the guns, Jordan offered to pay $5,500 of his legal fees to cover the cost of representation and discussed with Hash different theories for defeating his charges, clearly assuming some share of responsibility for Hash's predicament. Jordan had no job while these events unfolded or during the course of the entire conspiracy; no source of income or purpose for the guns beyond the drug operation in which he, Hash, and others were involved.

The jury likewise could infer a relationship to drug trafficking from the physical appearance and characteristics of the firearms themselves. Both the mini Draco and GSG are assault-style weapons of more compact and concealable design. Jordan acknowledged that he preferred "something small," referencing the mini Draco.[6] The guns are neither hunting rifles nor casual weapons, as confirmed by Trooper Morehead and the jury's ability to make a basic inspection. Hash purchased them on July 12 with eight high-capacity magazines, several of which

---

6 The firearms were more formally identified at trial as a German Sporting Guns, model GSG-522, .22cal semi-automatic pistol with convertible stock, and a Romarm/Cugir, model Mini Draco, 7.62mm semi-automatic pistol.

21

were loaded, a 110-round drum, and a heavy bag of bullets.   In their own words, Jordan and Hash repeatedly described the firearms as "nasty," "nasty as hell," and "straight tactical sh*t."   Their purpose for the guns was not innocent —they were focused, at minimum, on the weapons' intimidating and militaristic qualities.

Finally, the jury could draw inferences about the relationship between these guns and the drug conspiracy from the nature of the conspiracy itself.   The government overwhelmingly established at trial that Jordan was a high-level source of supply for a large-scale drug trafficking operation involving at least eight named or testifying co-conspirators. Utilizing drug connections in Arizona, New York, North Carolina, and abroad, he acquired and distributed multiple kilograms of cocaine, methamphetamine, heroin, and fentanyl.   He routinely engaged in transactions involving tens and hundreds of thousands of dollars in cash, which he delivered personally and by mail.   The jury could properly infer that firearms would be sought and used to protect the assets of an organization of this size and scope.

From the foregoing facts, Jordan cannot establish that evidence in support of his conviction was insufficient as a matter of law.[7]   There was plenty of evidence from which the jury could infer Jordan's intent to possess these firearms in furtherance of his drug operation.   As the court properly instructed the jury,

> The term "to possess a firearm in furtherance of a drug trafficking crime" means that the firearm helped forward, advance or promote the commission of the drug trafficking crime. The mere possession of a firearm at the scene of such a crime is not sufficient

---

[7] The court properly instructed the jury that it could find Jordan guilty as a principal or as an aider and abettor, as charged in the third superseding indictment, the former upon proof beyond a reasonable doubt that Jordan "personally committed or participated in" the crime, and the latter upon proof that Jordan "knowingly and deliberately associated himself in some way with the crimes charged and participated with the intent to commit these crimes." *Jury Instructions* at 42; *see also United States v. Snow* 595 Fed.Appx. 223, 226 (4th Cir. 2015) (observing rule imposing liability for co-conspirator's reasonably foreseeable possession of firearms in furtherance of conspiracy).

22

under this definition. The government must present evidence which proves beyond a reasonable doubt that the firearm played some part in furthering the crime. In making its determination, the jury may consider the evidence as to the ways in which a firearm might be involved in committing the crime of drug trafficking. In addition, the jury may consider but is not limited to considering the type of firearm, the accessibility of the firearm, the firearm's proximity to drugs or drug profits, the circumstances under which the firearm was found, whether the weapon is stolen, the status of possession (legitimate or illegal), whether the firearm is loaded, and the nature of the drug trafficking alleged in this case.

*Jury Instructions* at 51-52; *see also United States v. Goodwin,* 452 Fed.Appx. 239, 247, 2011 WL 5188941 at *7 (4 Cir. 2011) ("'the fact finder is free to consider the numerous ways in which a firearm might further or advance' the conspiracy, including by providing security during drug transactions and helping defend turf").  Against his backdrop, the jury found Jordan guilty of this offense, and in doing so could infer from the evidence described herein that Jordan (1) was a member of a drug conspiracy at relevant times to include the period between July and August 2017, and (2) as a principal or as an aider and abettor of Hash, possessed assault weapons for purposes pertaining to Jordan's sole occupation at the time; namely, the acquisition and distribution of vast quantities of narcotics and currency.   His motion for judgment of acquittal on ground of insufficiency should be denied.

### III.   THE COURT PROPERLY DENIED THE DEFENDANT'S MOTION FOR A MISTRIAL

The defendant asserts that the court erred in denying his motion for a mistrial.  The government disagrees for the reasons set forth below.

His motion for a mistrial was based on the testimony of Chelsea Fry.   Fry testified for several hours during trial about the full scope of her association with Jordan.   Beginning with the date they met, she described in detail the evolution of her personal and drug dependence on Jordan and her extensive involvement in his drug trafficking business, culminating in her arrest

23

on a final drug run to New York.   At one point, Fry made a brief reference, not to Jordan's status as a convicted felon standing alone, but to the fact that Jordan told her he was a convicted felon as one method of coercing her to act as a drug courier on his behalf.

The comment came about during questioning about the manner in which Fry was facilitating Jordan's drug operation.   Fry testified that Jordan trained her to handle a variety of tasks on his behalf – transporting drugs; weighing, cutting, packaging, and stashing drugs; selling drugs, and even finding "testers," who would sample Jordan's drugs by different methods (snorting, smoking, intravenous injection) to determine whether they were weak or sufficiently potent to cause an overdose.

She also testified to functioning as a drug courier at Jordan's behest.   According to Fry, Jordan explained to her in conversation that it was advantageous for her to act as a courier because she was Caucasian and female.   He also told her it was important for her to drive because he was a convicted felon while she had a clean record.   The relevant portion of the transcript reads as follows:

Q:  Okay. Did you ever have any discussions with Mr. Jordan directly about why it was important for you to be the driver?

A:  Yeah, yes.

Q:  And what did Mr. Jordan tell you about that?

A:  Because I'm white, he's black.   I'm a female, he's a male.   I have a clean record, whereas he's a convicted felon.

Tr. of Chelsea Fry at 3:4-11.   The court denied the defendant's subsequent motion for a mistrial, struck that portion of Fry's response from the record and gave a comprehensive limiting

24

instruction, directing the jury to disregard the statement in its entirety and reminding the jury of the presumption of innocence. *Id.* at 6:18-7:21. The court made similar admonitions again during its closing instructions.

Error resulting from Fry's comment, if any, was cured by the court's prompt and comprehensive curative instruction and the overwhelming evidence against Jordan at trial.8

As the court properly noted in denying the motion for mistrial, trial courts have broad discretion to determine whether to grant a motion for mistrial in lieu of a host of alternatives. *United States v. Johnson,* 587 F.3d 625, 631 (4th Cir. 2009). "Denial of a defendant's motion for mistrial is within the sound discretion of the district court and will be disturbed only under the most extraordinary of circumstances." *United States v. Dorlouis,* 107 F.3d 248, 257 (4th Cir. 1997); *see also United States v. Helem,* 186 F.3d 449, 454 (4th Cir. 1999) (holding that decision to give curative instruction and content of instruction is reviewed only for abuse of discretion). Factors the court considers include the closeness of the case, the centrality of the issue affected by the error, and steps taken by the court to mitigate its effect. *United States v. Nyman,* 649 F.2d 208, 212 (4th Cir. 1980).

"Before granting a mistrial, the court should always consider whether the giving of a curative instruction or some alternative less drastic than a mistrial is appropriate." *United States*

---

8 Of note is the fact that Fry's testimony concerned a statement of Jordan himself, made to her as justification for his request that she transport drugs on his behalf. Fry did not merely comment on his conviction status for some extraneous purpose. She testified that Jordan gave several justifications for asking her to be a courier – that she was female, that she was Caucasian, and that she had a clean record as compared to his. His conviction status was a specific reason given by him for his insisting that she drive. These statements are opposing party statements in furtherance of the conspiracy under FRE 801, relevant under Rule 401, and arguably admissible under Rule 404(b)(2) to demonstrate Jordan's knowledge, intent, preparation, and planning with respect to Fry's role in the conspiracy.

25

*v. Martin*, 756 F.2d 323, 328 (4th Cir. 1985). Once an instruction is given, the jury is presumed to be capable of following it. This includes an instruction to disregard evidence, absent some strong indication that the evidence was so powerful that a jury could not ignore it and the defendant would be harmed as result. *United States v. Jones,* 907 F.2d 456, 460 (4th Cir. 1990).

Trial courts likewise have broad discretion to grant or deny a motion for a new trial. *United States v. Smith*, 451 F.3d 209, 216-217 (4th Cir. 2003).   More specifically, the Fourth Circuit has held that "a trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare case when the evidence weighs heavily against it." *Id.* (internal quotation marks omitted).   Careful review and analysis of the testimony at issue in this case demonstrates that the court properly denied the motion for mistrial and should likewise deny the defendant's motion for new trial on this issue.   Jordan has failed to demonstrate that Fry's statement, coupled with the court's curative instruction, made the "trial so fundamentally unfair as to deny [him] due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974).

A new trial is unwarranted based on these principles.   As the court noted during trial, "[t]his is not a case where the Government improperly attempted to put the matter before the jury or where repeated mention of the previous incarceration or other misconduct occurred." *United States v. Allen*, 1993 U.S. App. LEXIS 29850 at *3 (4th Cir. 1993) (*citing United States v. Warf,* 529 F.2d 1170, 1174 (5th Cir. 1976); *United States v. Ratner*, 464 F.2d 169, 171-172 (5th Cir. 1972).)   The government's question to Fry was open-ended in this instance, and geared toward the reasons Fry was transporting Jordan's drugs.   The government neither expressly nor intentionally solicited information from Fry regarding the defendant's criminal history, and there was no repetition or further mention of this issue during trial.   While an unexpected reference to

26

a prior conviction is troubling, it does not constitute reversible error as a matter of law.   *United States v. Morrow*, 731 F.2d 233, 235 n.4 (4th Cir. 1984), *citing United States v. Murphy*, 696 F.2d 282, 287 (4th Cir. 1982).

Her comment also was fleeting and promptly addressed by the court, in a case in which the evidence against the defendant was already overwhelming.   As in *Allen*, Jordan's statement to Fry "came up only incidentally, an immediate objection to the comment was sustained; a curative instruction to the jury was given; and there were no other references" to the issue during the government's case in chief.   1993 U.S. App. LEXIS 29850 at *4.   It surfaced in the midst of several hours of testimony by Fry, in which she detailed every major aspect of her involvement in Jordan's conspiracy, from the inception of their relationship until her arrest nearly a year later.

In addition to Fry's testimony, jurors heard from numerous fact and law enforcement witnesses over six days of trial, detailing the manner in which government agents carefully gathered evidence of Jordan's drug trafficking activities through the use of real-time surveillance of him and his known associates, including Clifton Myers, Perry Hash, and Seth Adams.   Through information gleaned from those investigative techniques, agents observed Jordan and his associates, a) surreptitiously mailing large sums of cash to suppliers in Arizona on July 10 and July 17, 2017; b) on July 12, 2017, using Perry Hash to obtain two assault weapons from a private party for cash, along with eight high-capacity magazines, a 110-round drum, and a bag of ammunition; (c) traveling to New York and returning to Virginia on August 5, 2017 with two kilograms of fentanyl; d) picking up a package from Arizona that was found to contain one-half kilogram each of cocaine and heroin on August 10, 2017; and, e) attempting to dispose of those drugs by throwing them into a creek that same day.

27

In connection with each of these major events, the jury reviewed text messages and recorded conversations between Jordan and his co-conspirators, in which Jordan reveals knowledge of wrongdoing in his own words. Thus, when considered against the backdrop of such abundant and cumulative evidence against Jordan, the effect of Fry's statement was "tenuous at best; indeed, a mere superfluity." *United States v. Morrow*, 731 F.2d at 233, 235 n.4 (4th Cir. 1984) The government solidly proved its case, and the court gave a strong curative instruction promptly during Fry's testimony and later during closing instructions. Denial of the motion for a mistrial was proper under these circumstances, and a new trial is neither necessary nor warranted.

Wherefore, for each of the foregoing reasons, the government respectfully requests that the court deny the defendant's motion for a judgment of acquittal and, in the alternative, for a new trial.

Respectfully submitted,
THOMAS T. CULLEN
United States Attorney

By: s/ Anthony P. Giorno
Assistant U.S. Attorney
VSB No. 15830
United States Attorney's Office
310 First Street, SW
Roanoke, Virginia 24011
*anthony.giorno@usdoj.gov*

By: s/ Kari K. Munro
Assistant U.S. Attorney
VSB No. 65770
United States Attorney's Office
310 First Street, SW
Roanoke, Virginia 24011
*kari.munro@usdoj.gov*

28

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2020 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for defendant.

/s/ Kari K. Munro
Assistant United States Attorney